# Mercersburg College *v.* Mercersburg Borough, Appellant.

*Constitutional law—Taxation—Public charities—Exemption—Act of March 24, 1909, P. L. 54.*

1. The Act of March 24, 1909, P. L. 54, which exempted from taxation churches, colleges and other institutions "founded, endowed and maintained by public or private charity, provided, that the entire revenue derived by the same be applied to the support of, and to increase the efficiency and facilities thereof, the repair and necessary increase of grounds and buildings thereof, and for no other purpose," does not violate art. IX, sec. 1, of the constitution relating to uniformity of taxation and exemption from taxation.

2. The Act of March 24, 1909, P. L. 54, is not unconstitutional because it contains no reference to the Act of May 29, 1901, P. L. 319, which amended the Act of May 14, 1874, P. L. 158. The act of 1909 relates to a different subject from that covered by the amendment of 1901, and is not repugnant to the latter.

3. A lease of land by a theological seminary to a college for ninety-nine years, for educational purposes, at a nominal rent confers such an interest on the college as brings the land within the exemption referred to in the Act of May 29, 1901, P. L. 319, if that act be deemed constitutional and operative.

4. It seems that the Act of May 29, 1901, P. L. 319, amending the Act of May 14, 1874, P. L. 158, is defective in title, and therefore unconstitutional.

5. A store conducted in a small room of a college building, will not render the building taxable, if otherwise exempt, where it appears that the college received no rent or profit from the store, and that whatever profit was made through it, was turned over to the athletic association of the college, and all of it used in the payment of expenses incidental to such association.

6. Where taxes assessed against a college are for land, a part of which is in a borough, and part in a township, and some of the land of a known acreage is used for agricultural purposes, and therefore taxable, the court may enter a decree exempting the other lands of the college from taxation, although it is not definitely ascertained how much of the college property was in the borough, and how much in the township.

Argued Oct. 22, 1912. Appeal, No. 61, Oct. T., 1912, by defendant, from decree of C. P. Franklin Co., Equity

Docket, Vol. 3, p. 118, on bill in equity in case of Regents of Mercersburg College v. Burgess and Town Council of Mercersburg Borough. ⸱ Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Bill in equity for an injunction.

SHULL, P. J., found the facts and conclusions of law to be as follows:

### FINDINGS OF FACT.

1. The plaintiff corporation was chartered by decree of court, October 30, 1865, under articles of association as "A college for the education of youth in the learned languages, the arts, sciences and useful literature," with power to confer degrees as have been usually granted in other colleges and universities. The management and control, under the charter, is vested in regents, to be elected or chosen as provided in its charter, some of whom shall be elected by the Synod of the Potomac of the Reformed Church of the United States.

2. The powers, inter alia, conferred upon the regents in the government and perpetuation of the institution is to acquire and hold personal property and real estate, repair and erect buildings for the general advantage and prosperity of the institution, conduct and manage its affairs, etc.

3. The corporation owns in fee about 112½ acres of land, situate partly in the borough of Mercersburg and partly in the township of Montgomery, Franklin county, Pa. A portion of this land has erected thereon suitable buildings, a part is used for campus and other actual necessary purposes in the operation and management of the institution. Another portion of the plot owned in fee, comprising about seventy-five acres, is used for trucking and the general and ordinary agricultural purposes.

4. In addition to the lands owned in fee the plaintiff has leased for a period of ninety-nine years, from the Theological Seminary of the German Reformed Church of

the United States, four acres of land in the borough of Mercersburg upon which are erected some of the halls and buildings of the institution. This is leased at a nominal rental, the lessee to pay taxes, and shall use it for no other than the purposes designated, viz.: as an institution of learning.

5. The college was founded by charitable bequests and by individual gifts and bequests, and may reasonably expect to receive additional donations and contributions, to further its usefulness. For many years the institution was not prosperous, and its perpetuation was despaired by its managers. But, in the past decade, under wise management and the skillful guidance of a most capable and efficient principal, it has developed into a growing concern, the revenues from which now yield a surplus revenue of several thousand dollars over the actual operating expenses.

6. In addition to the income from tuition and boarding, etc., there is derived certain profits from that portion of the lands not in actual use and immediately necessary for school purposes. From this land vegetables are raised and consumed upon the table. Hay and grain are raised, a part of which is consumed by the live stock on the premises, and the balance is sold and the receipts therefrom passed to the general account of the institution.

7. Hogs are fattened from the offal of the college kitchen and table, and from the feeding of hogs a profit is derived yielding in the past ten years an annual net profit of over $400.

8. A store is conducted in a room of Main Hall for the convenience, accommodation and better discipline of students of the institution, and is patronized only by the students. For this business, a mercantile license is paid, and the profits go to the support of the athletics of the school.

9. The entire income of the college in excess of the sum used for its maintenance is consumed in betterments, such as extensions in grounds and buildings, equipment, ap-

paratus, necessary and essential to its proper and successful operation, and for the payment of interest on existing indebtedness now exceeding the sum of sixty thousand dollars.

10. The regents serve without compensation. No stock has ever been issued nor has any individual received any pecuniary advantage or profit from the earnings. A large number of the students act in the capacity of table-waiters and in the performance of other duties in consideration of reduced price for boarding and tuition at the institution.

11. The institution so far as its accommodations admit is open to all white male students without discrimination as to religious beliefs or creed. No sectarian test is applied in the employment of instructors. The rates of board and tuition to those able to pay the full price is $400, being an increase over the sum charged in past years, but is much less than that charged in similar institutions. The enrollment numbers approximately 450 pupils.

12. Since the year 1909 the plaintiff has purchased a tract of land for the sum of $4,500, which is all paid but about ten per cent of the purchase price. It has recently completed an electric light plant costing over $25,000, much of which was raised by voluntary contributions or private subscriptions, in the nature of gifts or donations.

13. There is also at present in process of construction a gymnasium that will cost approximately, when completed and equipped, $100,000.

14. The lands and various plots with buildings are not separately assessed. For the year 1910, the county of Franklin levied taxes on real estate in Mercersburg borough against plaintiff the sum of $129.13; the borough authorities for borough purposes, $284.08; the school board of the independent school district levied the sum of $206.20, and for lands lying in the township of Montgomery there was levied for county purposes $25.00; by the school board, $40.00, and for road purposes, $30.00.

15. Taxes for the year 1910 were also assessed upon the personal property of defendant, which said taxes were duly paid.

### CONCLUSIONS OF LAW.

1. The plaintiff corporation is a college or institution of learning founded, endowed and was at the time of the assessment of the taxes in the years 1910 and 1911 maintained by private charity.

2. That the grounds occupied by the buildings, together with such other lands annexed thereto, and necessary for the occupancy and enjoyment of the institution, is exempt from taxation.

3. That an athletic association is necessary for the proper conduct and operation of the school, and that the grounds used therefor is a part and parcel of the institution.

4. That the land used as a truck garden and farm, comprising about 75 acres, not being presently used and immediately necessary for the occupancy and enjoyment of the institution, is not exempt from taxation; but the lands so acquired may and doubtless will in the future be actually necessary for the proper and successful operation of the institution.

5. That the entire revenue derived by plaintiffs in the conduct of the school is being used in the support of the school to increase the efficiency and facilities thereof, make repairs, and for the necessary increase of grounds and buildings, and for no other purpose.

And now, August 16, this cause came on to be heard upon bill, answer, evidence and argument of counsel, and it is ordered, adjudged and decreed that the prothonotary enter a decree nisi in accordance with the findings, viz.: That the defendants respectively be enjoined from collecting any of the assessed taxes upon the buildings and grounds described in the bill, in so far as the same are annexed to the lands covered by the bill necessary for the occupancy and enjoyment of the same, comprising about

thirty-seven and one-half acres, notice to be given to the parties or their counsel of record sec reg.

The court subsequently entered a final decree in accordance with the conclusions of law.

*Error assigned* among others was the decree of the court.

*M. W. Jacobs*, with him *T. Z. Minehart*, for appellant.— The act of 1909 is inoperative to change existing law, because it purports to amend a nonexisting statute: Billings v. Harvey, 6 Cal. 381; Wall v. Garrison, 11 Colo. 515 (19 Pac. Repr. 469); In re House Resolution, 12 Colo. 359 (21 Pac. Repr. 485); Lampkin v. Pike, 115 Ga. 827 (42 S. E. Repr. 213); Louisville, etc., R. R. Co. v. East St. Louis, 134 Ill. 656 (25 N. E. Repr. 962); Draper v. Falley, 33 Ind. 465; Blakemore v. Dolan, 50 Ind. 194; Ford v. Booker, 53 Ind. 395; Reissner v. Hurle, 50 Ind. 424; Cowley v. Rushville, 60 Ind. 327; Niblack v. Goodman, 67 Ind. 174; Lawson v. DeBolt, 78 Ind. 563; McIntyre v. Marine, 93 Ind. 193; Hall v. Craig, 125 Ind. 523 (25 N. E. Repr. 538); Eversole v. Chase, 127 Ind. 297 (26 N. E. Repr. 835); Boring v. State, 141 Ind. 640 (41 N. E. Repr. 270); State v. Wheeler, 172 Ind. 578 (89 N. E. Repr. 1); Shutt v. State, 89 N. E. Repr. 6; State v. Cognevich, 124 La. 414 (50 So. Repr. 439); State v. Benton, 33 Neb. 823 (51 N. W. Repr. 140); Robertson v. State, 12 Tex. App. 541.

The title of the act of 1909 is misleading: Phœnixville Boro. Road, 109 Pa. 44; Sewickley Boro. v. Sholes, 118 Pa. 165; Mt. Joy Borough v. Turnpike Co., 182 Pa. 581; Hood v. Norton, 202 Pa. 114; Com. v. Hazen, 207 Pa. 52; Com. v. Samuels, 163 Pa. 283; Penna. R. R. Co. v. Riblet, 66 Pa. 164; Bennett v. Sullivan County, 29 Pa. Superior Ct. 120.

The act of 1909 was intended, not to enlarge, but to restrict exemption: Ihmsen v. Nav. Co., 32 Pa. 153; Cope's Est., 191 Pa. 1; Portuondo's Estate, 6 Pa. Dist. Rep. 748; Dugan v. Bridge Co., 27 Pa. 303; Jones v. Tatham, 20

Pa. 398; Shewell Avenue, 20 Pa. C. C. Rep. 278; Com. v. Hough, 8 Pa. Dist. Rep. 685.

Exemption from taxation is never to be implied; it is always presumed against and statutes granting exemptions are to be strictly construed: Academy of Fine Arts v. Phila. County, 22 Pa. 496; Com. v. Cover, 29 Pa. Superior Ct. 409; Crawford v. Burrell Twp., 53 Pa. 219; Jones, etc., Mfg. Co. v. Commonwealth, 69 Pa. 137; Erie Ry. Co. v. Commonwealth, 66 Pa. 84; N. Y. & Erie R. R. Co. v. Sabin, 26 Pa. 242; Hammett v. Phila., 65 Pa. 146.

If intended to enlarge the exemption, the act of 1909 is unconstitutional: White v. Smith, 189 Pa. 222; Miller's App., 10 W. N. C. 168; Thiel College v. Mercer County, 101 Pa. 530; Hunter's App., 22 W. N. C. 361; Philadelphia v. Women's Christian Assn., 125 Pa. 572; Sunday School Union v. Philadelphia, 161 Pa. 307; White v. Smith, 189 Pa. 222; Harrisburg v. Harrisburg Academy, 26 Pa. Superior Ct. 252; Mercersburg College v. Poffenberger, 36 Pa. Superior Ct. 100.

Property leased from the theological seminary was taxable: Philadelphia v. Barber, 160 Pa. 123.

The building in which the store was conducted is taxable: Sunday School Union v. Philadelphia, 161 Pa. 307; Pocono Pines Assembly, etc., v. Monroe County, 29 Pa. Superior Ct. 36.

*O. C. Bowers* and *John G. Johnson*, with them *Bonbrake & Zacharias*, for appellee.—A tenant for years has an estate in the land, not merely an interest in the term: Averill v. Taylor, 8 N. Y. 44; Mullen v. Juenet, 6 Pa. Superior Ct. 1; Philadelphia v. Barber, 160 Pa. 123; Leathwhite v. Bennet, 11 Atl. Repr. 29; Kittanning Academy v. Kittanning Bor., 8 Pa. Superior Ct. 27.

Whilst it is true that, strictly speaking, the office of a proviso is to limit or restrict the general language preceding it, it is also true, we submit, that no provision of an act of assembly in this commonwealth has ever been declared inoperative simply because introduced by way

of a proviso: Greenfield Ave. Case, 191 Pa. 290; Com. v. Gregg, 161 Pa. 582.

The act of 1909 is constitutional: Sharpless v. Mayer, 21 Pa. 147; Erie & N. E. R. R. Co. v. Casey, 26 Pa. 287; Com. v. Butler, 99 Pa. 535; Wagner Free Inst. v. Phila., 132 Pa. 612; Phila. v. Women's Christian Asso., 125 Pa. 572; Donohugh's App., 86 Pa. 306; Phila. v. Barber, 160 Pa. 123.

OPINION BY HENDERSON, J., April 21, 1913:

That Mercersburg College has the general qualities of a public charity appears from all of the evidence. It had its origin in a charitable foundation and its enlargement by the acquisition of more land and an increased number of buildings was made possible by contributions to promote the education of young men. No one is excluded on account of religious belief or class distinction, and while there is a necessary limit to the capacity of the institution it affords the same opportunity for any boy desiring an education which may be found in any collegiate institution. Its activities are carried on without stockholders and without profit to the regents who exercise the functions of trustees. All of the income of the institution is applied to the increase of its efficiency and the enlargement of its capacity to educate. Its income derived from the charge for the education, board, lodging and other care of the students in attendance, from land cultivated, from books, athletic supplies used by the students and from a small endowment fund for several years has exceeded the actual cost of maintenance leaving out of consideration the addition of buildings, the enlargement of some already built and other application of the fund having for its object the larger capacity for carrying out the educational plans of the managers. Because of the acquisition of this income in excess of the expenses for maintenance for the current year it was decided in Mercersburg College v. Poffenberger, 36 Pa. Superior Ct. 100, that the corporation was not a purely public charity and

was therefore not exempt from taxation under the Act of May 14, 1874, P. L. 158. After the decision in the case referred to the Act of March 24, 1909, P. L. 54, was passed. This act amended the act of 1874 so as to exempt, inter alia, colleges, seminaries, academies, associations and institutions of learning with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same founded, endowed and maintained by public or private charity provided that the entire revenue derived by the same be applied to the support of, and to increase the efficiency and facilities thereof, the repair and necessary increase of grounds and buildings thereof and for no other purpose. It is conceded that the language of this amendment covers the plaintiff's case and the principal proposition of the appellants is that the act is unconstitutional. The argument is that institutions of "purely public charity" only exist as such when maintained by charitable contributions or when the income derived from the prosecution of its business does not exceed the cost of maintenance. It is not controverted that since the decisions in Philadelphia v. Women's Christian Ass'n, 125 Pa. 572, and Episcopal Academy v. Philadelphia, 150 Pa. 565, an institution which is in its character and object a purely public charity does not cease to be such in respect to its liability for tax merely because it receives from those enjoying its benefits a sufficient sum to keep it in operation. That the contribution of the land and buildings makes the charity possible is evident from every point of view. No rent is paid for the use of the real estate and there is therefore an annual charitable contribution to the institution in such use. The income from administration would not be sufficient to carry on the school and pay rent for the buildings which shelter it. In an important sense, therefore, the charity is not self-supporting although its income from tuitions and other sources more than meet the cost of instruction, board, lodging, etc. Without the constant reinforcement of the former charitable donations the school could not be maintained at all. Maintenance, too, in the

legislative view embraces a growth with the expanding conceptions of what is properly and necessarily implied in the training which should be given in a collegiate establishment. The enlargement of the buildings, the construction of a gymnasium and athletic field, the increase of the apparatus used for instruction in the physical sciences, improved methods of illumination and the decoration of the grounds to the end that the institution may become more efficient and attractive to those seeking places of education in harmony with the spirit of the age may well be regarded as investments in the line of maintenance. Considerations of this character doubtless brought about the adoption of the act of 1909 which gives legislative interpretation to the article of the constitution above referred to and expressly includes those educational institutions in the class of purely public charities which are carried on without restriction as to classes even though the income derived by them from endowments and tuitions charged may at times exceed the cost of maintenance provided such excess is applied to the support of and to increase the efficiency and facilities of the institution, the repair and necessary increase of grounds and buildings thereof and for no other purpose. It was said in Donohugh's Appeal, 86 Pa. 306, that "Especially is great respect due to the legislative construction of the constitutional provision where as in the present case it is a question not of private right but of public policy. For the preservation of individual rights whether as between man and man or between the citizens and the public or the government the courts are the natural guardians with special advantages of training and modes of procedure for the attainment of justice, but in the preservation as well as for the determination in the first instance of matters of state policy the proper tribunal is the legislature; and its construction of a constitutional mandate upon this subject must be held binding and conclusive until shown clearly and beyond a question to be in violation of the intention of the people in their sovereign ex-

pression of their will through the constitution." The
principle thus expressed applies with force and conclu-
siveness against the argument of the appellants. In the
same case it was held that the word "purely" should be
interpreted so as to extend it to private institutions for
purposes of purely public charity and not administered
for private gain and that this interpretation best sub-
served the public interests. We do not regard it as nec-
essary to enter into a consideration of the numerous cases
which have arisen out of the application of the act of 1874.
That was effectively done in Mercersburg College v. Pof-
fenberger, 36 Pa. Superior Ct. 100. The act of 1909, has
more clearly defined the scope of the operation of the act
of 1874 and has given interpretation to the constitutional
provision with which we should concur. It is not so ob-
viously clear that this is a misapprehension of the mean-
ing of the constitution as to justify us in saying that the
act in question is forbidden by the fundamental law. The
objection that because the amendment of 1909 is in a pro-
viso it must be regarded as a limitation rather than an en-
largement of the statute amended is met by the decision
in Com. v. Gregg, 161 Pa. 582, where it was said that gen-
erally speaking, the legislature is the exclusive judge of the
form in which enactments shall be put and its mandate in
that respect cannot be questioned unless it transgresses a
plain prohibition in the constitution. There can be no
doubt of what was intended in the enactment under con-
sideration, and the language used is to receive the construc-
tion and to be given the effect which its evident meaning
requires.

The appellants contend also that the act is unconstitu-
tional because there is no reference therein to the Act of
May 29, 1901, P. L. 319, amending the act of 1874 by
which amendment as contended by the appellants the act
of 1874 was merged in the act of 1901, and thereafter ceased
to be in force. The effect of the act of 1901 was to restrict
the operation of the act of 1874 to the extent declared in
the amending statute and on the principle announced in

Sewickley Boro. v. Sholes, 118 Pa. 165, would seem to be unconstitutional. The title to the act of 1874 is: "An act to exempt from taxation public property used for public purposes and places of religious worship, places of burial not used or held for private or corporate profit and institutions of purely public charity." The title of the act of 1901 is: "An Act to amend Section one of an Act approved May 14, 1874, entitled," etc. As the original act was by its title one of exemption from taxation and the act of 1901 gives no intimation that it is to have the effect of subjecting to taxation property which was not theretofore liable it is apparently in violation of sec. 3, art. III, of the constitution. However that may be, we do not regard the act of 1874 as repealed by the act of 1901. It is a more reasonable view to hold that the act of 1874 is in force amended by the act of 1901, if that be a valid enactment and if so there is no difficulty in the way of an amendment of the original enactment without reference to the intervening statute: Com. v. Kenneson, 143 Mass. 418; White v. Kings County Home, 141 N. Y. 123. The act of 1909 relates to a different subject from that covered by the amendment of 1901 and is not repugnant to the latter. A part of the property occupied and used by the college is held by lease from the Theological Seminary of the German Reformed Church in the United States. The property leased contains about four acres on which some of the buildings in use are located. The lease is for ninety-nine years for educational purposes at the nominal rent of $1.00 per annum. The charter of the Theological Seminary is not in evidence, but we may infer from all that appears in the case that the property was held for educational purposes and was transferred to the plaintiff to more effectually carry out the objects of its owner. It is claimed that this is not exempt from taxation because of the amendment of the act of 1874 by the act of 1901. We have already referred to the subject of the constitutionality of the latter statute, but if that be held to be valid we think the title exhibited by the

plaintiffs is such an interest as brings it within the exemption.

Objection is made that the college maintained a store in a room in one of the buildings which was conducted with profit and that this deprived the corporation of the privilege of claiming exemption as to that building. We do not understand from the evidence, however, that the store is conducted as a means of gain for the college. The evidence shows that its profits are turned over to the athletic association or department and that all of it is used in the payment of expenses incident to the maintenance of a ball club and other athletic organizations and to the payment of the expenses of similar organizations coming to the college to compete in physical contests. No rent for the room is received by the college, the apartment occupied is a small one and we do not find sufficient reasons under the evidence for holding that the room is leased or occupied by the college as claimed by the appellants.

A part of the tax was assessed by the county, a part by the borough, a part by Montgomery township, a part by Montgomery Independent School District and a part by the borough of Mercersburg. The court found that seventy-five acres of land were used as a truck garden and farm and not necessary to the occupancy and enjoyment of the corporation and therefore liable to taxation. The evidence does not clearly show how much of the property of the plaintiff is in the township and how much in the borough. We find on the record an admission by counsel that approximately twenty-one acres of the campus including the four acres of leased land are in the borough and twenty-four acres of the campus in Montgomery township. That part used for agricultural purposes and for a truck garden is not exempt from taxation. Such use of the property is convenient and perhaps profitable but in no sense a necessary or usual adjunct of an educational institution. The liability of property so used to taxation was decided in Sisters of the Blessed Sacrament, 38 Pa. Superior Ct. 640. The learned judge of the court be-

low so held and the operation of the decree only went to the other property of the plaintiff.   It may not be an easy matter to determine what part of the tax is chargeable to this property.   All of it except about six acres is said to be in the township, and the assessment roll presumably shows the valuation put on it by the assessors, and a basis for apportionment is thereby obtained.   Whether that can be done with regard to the six acres in the borough is more doubtful as that was apparently assessed with the other property.   It may be practicable on application to the court below to determine that matter.   The plaintiff contended that all of its property in the borough was exempt from taxation.   Just what the relation of the small part of its holdings in the borough devoted to gardening bears to the college campus does not appear in the evidence, but we cannot regard it as equitable to charge the whole of the tax on the college property because it has been made to appear that this small portion is taxable.   No provision has been made in the law for apportionment, but on equitable principles it has been held that such apportionment may be made where it appears from the assessment that such division can be arrived at: Phila. v. Barber, 160 Pa. 123.   We conclude with the court below, however, that the decree should remain as to all of the plaintiff's property except the land cultivated as a farm and the truck garden.   This we understand to be the scope of the decree, as the learned judge expressly held that the land used for agriculture was not exempt.

The decree is affirmed at the cost of the appellants.