Louis A. MATUTE, an infant, by Michael Matute, his father and next friend, and Michael Matute in his own right, Plaintiffs,

v.

CARSON LONG INSTITUTE, Defendant.

Civ. A. No. 5943.

United States District Court
M. D. Pennsylvania.

April 8, 1958.

John H. Bream, Norman M. Yoffe, Harrisburg, Pa., for plaintiffs.

Metzger, Wickersham & Knauss, Harrisburg, Pa., Allan W. Holman, Jr., New Bloomfield, Pa., for defendant.

FOLLMER, District Judge.

This matter is before the Court on defendant's motion for summary judgment for the following reasons:

(a) Defendant is a public charity and as such immune from liability for negligence.

(b) Plaintiffs, father and minor son, assumed the risk of injury to minor son while playing football and cannot recover for negligence as alleged in the complaint.

The complaint alleges that plaintiffs are residents of the State of New York and defendant is a Pennsylvania corporation; that on September 28, 1956, the minor plaintiff was enrolled as a student and attending the private school for boys owned and operated by defendant at New Bloomfield, Pennsylvania; that on said September 28, 1956, the minor plaintiff sustained a fracture of his collarbone while engaged in playing football

at the school. This suit is to recover damages alleged to be due father and son as the result of such injury to the minor plaintiff.

The complaint furthermore alleges that the defendant allowed the minor plaintiff to engage in the playing of football without having the consent of the parents of the said minor plaintiff; that the athletic coach negligently ordered and directed minor plaintiff to engage in a football game with the varsity team which consisted of players of considerably greater age, weight, size, and experience; that while so playing football minor plaintiff sustained a fractured collarbone and was otherwise injured.

In denying the various allegations of the complaint last above indicated, the answer avers that the parents of the minor plaintiff consented to have their son play football at defendant's school; that said parents had notice and knowledge of the fact that football was a part of the curriculum and daily activity of the student body of defendant school and that minor plaintiff intended to play and was playing football; that minor plaintiff had voluntarily gone out for the Junior High School team of defendant school and was participating with said squad in supervised blocking and tackling practice with other boys of said Junior High School squad which included grades 7, 8, and 9; furthermore, that while minor plaintiff did sustain a fracture of his collarbone he did not sustain other injuries.

Defendant supported its motion for summary judgment by affidavit of its President, Edward L. Holman. This affidavit sets forth, inter alia, that Carson Long Institute was founded in 1916 by Theodore K. Long to perpetuate the name and memory of his deceased son, William Carson Long, using as a basis for such foundation the New Bloomfield Academy, which was organized in 1836; that in 1920 defendant was incorporated as a nonprofit corporation, under the Act of 1874, April 29, P.L. 73, 15 P.S.Pa. § 1 et seq., for the purpose of the education of youth; that no shares in said defendant have ever been authorized or issued by its Board of Directors or under its Charter; that it is managed by a Board of Trustees or Regents and is comprised of a Junior School for Boys in the 6th, 7th, and 8th grades, and an Academic Department for more advanced students seeking preparation for college or other advanced work; that the educational curriculum is conducted in accordance with the standards of the Pennsylvania Department of Public Instruction for public education; that the tuition is considerably lower than other private schools of comparable status in the same area and is geared to cover only the actual cost of keeping and educating a boy at the institution and the maintenance of the buildings and facilities thereon, all of which was made possible by the endowment created by Theodore K. Long and wife. The affidavit sets forth further that there is no restriction on color or creed in the selection of students; that the campus comprises fifty acres of land, much of which was given to defendant by the late Theodore K. Long and Kate C. Long, his wife, shortly before the incorporation. Defendant also owns a three hundred fifty-one acre tract of woodland, part of which is used as a camp site; that defendant has always been considered a charitable educational institution by Perry County Commissioners and placed on list of real estate exempt from taxation pursuant to 72 P.S.Pa. § 5453.202(3); that defendant was treated as a charitable educational organization by the Federal taxing authorities upon the death of Theodore K. Long, whose will endowed the school, and that the school is now on the United States Treasury Department list of exempt institutions for income and estate tax purposes; that because of its charitable nature, defendant carried no liability insurance, but it did provide accident insurance for its students at the parents' expense, which plaintiff, Michael Matute, failed to purchase; that the endowment of defendant institute consists of buildings and land conveyed to defendant by the late Theodore K.

Long and Kate C. Long, his wife, and the residue of the estate of Theodore K. Long, comprising securities valued at approximately $62,485.37; that the interest from these securities and the small profit from operation are presently being used for the erection of needed buildings; that when the building program is completed it is contemplated that the interest from these securities will be used for the establishment of scholarships for worthy students.

The affidavit was supported by a number of exhibits, including a copy of Charter of defendant institution; letter of Lawrence G. Mohler, Chairman, County Commissioners, Perry County, Pennsylvania; letter of W. F. Blackman, Senior Trust Officer, Girard Trust Corn Exchange Bank of Philadelphia, Pennsylvania; letter of Charles I. Russell, Deputy Commissioner of Internal Revenue, Treasury Department, Washington, D. C.,; application of plaintiff Michael Matute for admission of his son, plaintiff Louis A. Matute, as a student at defendant institution, and finally a copy of prospectus of said defendant.

Plaintiffs, in their brief, indicated that on motion for summary judgment, for the purpose of determining liability of defendant for torts committed by its servants, agents, or employees, they do not question the facts alleged and offered by defendant in its affidavit or in its answers to interrogatories and for that reason they would not file counter affidavits.

Rule 56, Federal Rules of Civil Procedure, 28 U.S.C., relating to summary judgment, provides, in part, as follows:

"(b) For Defending Party. A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.

"(c) Motion and Proceedings Thereon. * * * The adverse party prior to the day of hearing may serve opposing affidavits. The judg-

ment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. * * * "

In view of the fact that plaintiffs do not deny the allegations of the affidavit and have filed no counter affidavits, it is obvious that there remains here no material issue of fact. On the basis, therefore, of the admitted facts, is defendant entitled to summary judgment?

Defendant is a corporate citizen of Pennsylvania. The accident which forms the basis of this suit occurred in Pennsylvania. Consequently, the rights and liabilities arising out of the said accident will be governed by the laws of Pennsylvania.

A trust for the advancement of education is charitable. Restatement of the Law of Trusts, § 370. In accordance therewith, see Pennsylvania Annotations to the Restatement.

Plaintiffs frankly admit that "Pennsylvania law is clear that 'public charities' are not liable for the torts committed by their servants", but they contend that the defendant is not a purely "public charity". In support of this position they lean heavily on In re Ogontz School Tax Exemption Case, 1949, 361 Pa. 284, 65 A.2d 150.

Hill School Tax Exemption Case, 1952, 370 Pa. 21, 87 A.2d 259, presents a situation very similar to the instant case. There the court found that the predecessor of the Hill School was the Meigs School which was founded in 1851 and successively conducted as a private school by father, son and grandson until 1920. At that date a nonprofit corporation was incorporated under the laws of Pennsylvania by the alumni of the school. It has since been conducted by the alumni as a nonprofit corporation. All of the assets of the Meigs School were transferred to the Hill School by the Meigs family. Purchase money bonds were

liquidated either by purchase or payment by the corporation through gifts of money by the alumni and friends of the school. The court further found that the Hill School was founded in whole or great part by charitable donations. There, as here, the Ogontz case was urged upon the court as controlling. The court held (370 Pa. 21, 28, 87 A.2d 259, 263):

"* * * That case (Ogontz) does not rule the present one. *There the corporation was not in fact entirely free from private profit motive.* The owner sold the school taking back in partial payment mortgages and bonds. *A debt of $550,000 was liquidated from the profits of the school.* The school also purchased from its profits a summer camp for $32,000. The tuition charged was sufficient to cover the entire cost of student aid to some of the students, and still leave a substantial profit. The former owner received a salary of $20,000 per year for some years, but which was later reduced to $8,000 a year. She was also given the use of a house and maintenance. Without the review in detail of its financial structure and administration, it will suffice to state that the findings of fact of the court below in that case did not establish that the Ogontz School qualified for the tax exemption claimed as a 'purely public charity'."

The comment of the court in the Hill case indicates clearly why the Ogontz case is easily distinguished from the instant case. There never was any material return connection between the founders of the Institute and the object of their bounty.

"Broadly, a charitable use or purpose may, where neither law nor public policy forbids, be applied to almost anything tending to promote the well doing and well being of social man, but the use or purpose must be a public, as distinguished from a private, one, for the benefit of the public at large or of a portion thereof or for the benefit of an in-

definite number of persons." 14 C.J.S. Charities § 12.

The last quoted comment further states (page 441):

"* * * In its legal sense, charity comprises four principal divisions: (1) Trusts for the relief of poverty and distress; (2) trusts for the advancement of education; (3) trusts for the advancement of religion; and (4) trusts for other purposes beneficial to the community not falling under any of the preceding heads."

■ On the standard thus stated, it would certainly appear that this defendant has the general qualities of a public charity.

In Mercersburg College v. Mercersburg Borough, 53 Pa.Super. 388 (a tax case), the court was called upon to pass on the constitutionality of the Act of March 24, 1909, P.L. 54. This Act exempted from taxation churches, colleges and other institutions "founded, endowed and maintained by public or private charity provided that the entire revenue derived by the same be applied to the support of, and to increase the efficiency and facilities thereof, the repair and necessary increase of grounds and buildings thereof and for no other purpose." The court held that the Act does not violate Art. IX, Sec. 1, of the Constitution of Pennsylvania, P.S., relating to uniformity of taxation and exemption from taxation. The court then went on to say:

"* * * The argument (that the Act was unconstitutional) is that institutions of 'purely public charity' only exist as such when maintained by charitable contributions or when the income derived from the prosecution of its business does not exceed the cost of maintenance. It is not controverted that since the decisions in Philadelphia v. Women's Christian Ass'n, 125 Pa. 572 [17 A. 475], and Episcopal Academy v. Philadelphia, 150 Pa. 565 [25 A. 55], an institution which is in its character and object a purely public charity

does not cease to be such in respect to its liability for tax merely because it receives from those enjoying its benefits a sufficient sum to keep it in operation. That the contribution of the land and buildings makes the charity possible is evident from every point of view. No rent is paid for the use of the real estate and there is therefore an annual charitable contribution to the institution in such use. The income from administration would not be sufficient to carry on the school and pay rent for the buildings which shelter it. In an important sense, therefore, the charity is not self-supporting although its income from tuitions and other sources more than meet the cost of instruction, board, lodging, etc. Without the constant reinforcement of the former charitable donations the school could not be maintained at all. Maintenance, too, in the legislative view embraces a growth with the expanding conceptions of what is properly and necessarily implied in the training which should be given in a collegiate establishment. The enlargement of the buildings, the construction of a gymnasium and athletic field, the increase of the apparatus used for instruction in the physical sciences, improved methods of illumination and the decoration of the grounds to the end that the institution may become more efficient and attractive to those seeking places of education in harmony with the spirit of the age may well be regarded as investments in the line of maintenance. Considerations of this character doubtless brought about the adoption of the act of 1909 which gives legislative interpretation to the article of the constitution above referred to and expressly includes those educational institutions in the class of purely public charities which are carried on without restriction as to classes even though the income derived by them from endowments and

tuitions charged may at times exceed the cost of maintenance provided such excess is applied to the support of and to increase the efficiency and facilities of the institution, the repair and necessary increase of grounds and buildings thereof and for no other purpose. * * * "

To quote again from Hill, supra [370 Pa. 21, 87 A.2d 262] (another tax case):

"The word 'purely' as used in the Constitution in the phrase 'purely public charity' means that the institution must be entirely free from private profit motive. In Burd Orphan Asylum v. School District, supra, we said 90 Pa. [21], at page 35: '* * * when the charity is public, the exclusion of all idea of private gain or profit is equivalent in effect to the force of "purely" as applied to public charity in the constitution.'

"In Donohugh's Appeal, supra, 86 Pa. [306], at page 314: 'The true test is to be found in the objects of the institution. Are they entirely for the accomplishment of the public purpose or have they some intermixture of private or individual gain?'

"In Episcopal Academy v. Philadelphia, supra, 150 Pa. at page 573, 25 A. at page 56: 'As no private or pecuniary return is reserved to the giver or any particular person, but all the benefit resulting from the gift or act goes to the public, it is a "purely public charity;" the word "purely" being equivalent to the word "wholly." '

"A purely public charity does not cease to be such where it receives some payment for its services. * * *".

From the above the distinction between Ogontz and the instant case becomes more apparent. In Ogontz there was no "exclusion of all idea of private gain or profit" and there certainly was "some intermixture of private or individual gain." In the instant case there is not

the slightest suggestion of either. All moneys received are first used for the customary operational expenses and the balance is plowed right back into the institution which, as stated in Mercersburg College, supra, "may well be regarded as investments in the line of maintenance."

On the basis of the admitted facts in the complaint, the answers to interrogatories, and the facts set forth in defendant's affidavit accompanying its motion for summary judgment, which are not denied by plaintiffs, I entertain no doubt that defendant is a public charitable institution.

There can be no question that the law of Pennsylvania grants immunity from tort liability to charitable institutions. That this is the fixed public policy of Pennsylvania was made crystal clear in the opinion of the court in Bond v. City of Pittsburgh, 1951, 368 Pa. 404, 407, 84 A.2d 328, 330, where the court stated in part:

> "Notwithstanding the violent criticisms that have been directed by academic legal writers against the doctrine of the immunity of charitable organizations from tort liability, and notwithstanding also the fact that there is considerable conflict in the judicial decisions on the subject among the several States, our own Commonwealth has, from the earliest times, stood firm in its adherence to the principle of immunity. * * *"

The court then quoted from Gable v. Sisters of St. Francis, 227 Pa. 254, 75 A. 1087, as follows:

> " * * * 'It is a doctrine too well established to be shaken, and as unequivocally declared in our own state as in any other, that a public charity cannot be made liable for the tort of its servants.' * * * "[1]

Finally, it seems clear that under the authority of Rule 56, Federal Rules of Civil Procedure, where the pleadings and admissions on file, together with the affidavit, show that there is no genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law.

In a situation where the opposing party failed to file opposing affidavits, the court in Surkin v. Charteris, 5 Cir., 197 F.2d 77, 79, in particular reference to the scope of Rule 56, said:

> " * * * Its purpose is not to cut litigants off from their right to trial by jury. On the contrary, it is to carefully test this, to separate the mere formal from the substantial, to determine what if any issues of fact are present for a jury to try, and to enable the court to expeditiously dispose of cases by giving judgment on the law where the material facts are not in dispute. * * The sufficiency of the complaint does not control and, although the burden is on the moving party to demonstrate clearly that there is no genuine issue of fact, *the opposing party must sufficiently disclose what the evidence will be to show that there is a genuine issue of fact to be tried.* * * * ". (Emphasis supplied.)

In view of the above findings, I feel that it is unnecessary to consider defendant's second reason offered in support of its motion for summary judgment, namely, that plaintiffs assumed the risk of injury to minor plaintiff and therefore cannot recover.

The motion for summary judgment will be granted.

[1]. See also, Episcopal Academy v. Philadelphia, 150 Pa. 565, 25 A. 55; In re Amole's Estate, 32 Pa.Super. 636; Mercersburg College v. Mercersburg Borough, 53 Pa.Super. 388; Menardi v. Thea. Jones Evangelistic Ass'n, Inc., D.C.E.D. Pa., 154 F.Supp. 622.