## Woods Schools Appeal.

532

Argued March 23, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Walter J. Collins, Jr.,* with him *David F. Maxwell,* and *Obermayer, Rebmann, Maxwell and Hippel,* for appellant.

*Sidney T. Yates* and *John W. Dean, 3rd,* for township school district and township, appellees.

*Donald W. Vanartsdalen* and *Frederick T. Bebbington,* for borough school district and borough, appellees.

*Samuel S. Gray, Jr.,* County Solicitor, for county, appellee.

*Abraham L. Freedman,* with him *Seymour Kurland,* for all appellees.

OPINION BY FLOOD, J., June 15, 1961:

The appellant, which operates a school for "exceptional" children and a research center, seeks a charitable exemption from local taxation for all of its real estate.

The right of exemption requires the institution to be one "of purely public charity" under Article 9, §1, of the Constitution and also to come within the terms

534

of the Act of May 21, 1943, P. L. 571, Art. II, §202 (72 PS §5453.202) which exempts "all hospitals . . . and institutions of learning, benevolence or charity . . . founded, endowed and maintained by public or private charity: Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose."

The court below held that under these provisions the research institute was tax exempt but the balance of the property used for the school was not because (1) the tuition charged to the students paid the entire costs of its operation and maintenance, together with a surplus which was applied to the use of the research center and (2) very few of the students paid less than the full cost of the education they received.

The appellant is a non-profit corporation. The school which it operates in Bucks County is renowned for its success in educating disturbed and handicapped children. The school was founded by Miss Woods as a privately owned institution in 1915. It was financially successful, was incorporated in 1943, and was a very flourishing institution when it was converted to a non-profit corporation in 1949. In the course of these transfers, Miss Woods donated her entire interest in the school to the appellant, subject to the payment of a salary to her of $15,000. per year for life, together with a house and all her living expenses. As the court below stated: "In its present form, appellant was 'founded' by a series of transactions, the net effect of which was an outright gift by [the foundress] in excess of $500,000. Even if we make the unwarranted assumption that the salary and other benefits received by her from 1949 to 1956 [the date of her death] were not earned by her, there would still be a clear gift by her to the appellant of at least $400,000."

Tuition in the case of almost all students pays the cost of their education and treatment and leaves a surplus. A Child Study and Treatment and Research Institute has been established and is being in part maintained out of the surplus revenues of the school. Private charitable gifts of at least $140,000. have been made to the institution and the Federal Government has made a grant of $176,250. to the research institute.

Judge FULLAM'S full and illuminating discussion has considerably lightened our labors in this case. He denied the exemption to the school property upon the authority of the *Ogontz School Tax Exemption Case*, 361 Pa. 284, 65 A. 2d 150 (1949), which held that an educational institution will be denied exemption when its earned income exceeds its cost of operation, if that earned income consists entirely of tuition charged to the students, almost all of whom pay the full cost of their education.

The appellant argues that the holding in the *Ogontz* case must be considered in the light of the subsequent decision in the *Hill School Tax Exemption Case*, 370 Pa. 21, 87 A. 2d 259 (1952), which the appellant argues, lays down the rule that the only prerequisites to the tax exemption of land necessary for the occupation and enjoyment of a private educational institution are: (a) charitable work; (b) a public institution; (c) foundation and maintenance by public or private charity and (d) no motive of private profit. In the *Hill School* case the Court said that while an educational institution to qualify for exemption must be free of any motive of private profit, it may receive some payment for its services. It distinguished the *Ogontz* case, supra, in that the Ogontz School was not entirely free from the profit motive. It pointed out that the owner of the Ogontz School sold the school to the corporation taking back in partial payment mortgages and bonds, a debt of

$550,000. was liquidated from the profits of the school, a summer camp was purchased out of its surplus receipts, the entire cost of student aid was also paid from the same source and even then the profits were not exhausted. On the other hand the situation in Hill School was that the owners sold the school to the corporation for $1,238,000., which was $1,000,000. less than its appraised value, almost all of the $550,000. bonds given the owner as part payment were liquidated by gifts of alumni and friends of the school, and payment of all deficits since was made from the same source.

It is true that this statement, leading to a finding that Hill School was founded in whole or in great part by charitable donations, makes it appear that in this respect the appellant's situation resembles Hill School rather than Ogontz School. However, the Court in the *Hill School* case mentioned three other considerations, as to which the appellant differs from Hill School and resembles Ogontz School. It notes that (1) during the twenty-nine years that the corporation operated the school it has received from alumni, friends and endowment over $4,500,000., used for additions, reduction of debts and free working funds with over $1,000,000. of the sum invested; (2) the cost of maintenance and instruction is greater than the tuition price and the school has been operated at a loss in all but three of the twenty-nine years, and the annual deficit, averaging 18% of the cost of operation, is made up from income from endowments, investments and gifts and (3) forty-nine percent of the students receive student aid.

By contrast, in the Woods Schools, tuitions have in all but one of the last five years paid the operating expenses and the cost of partial scholarships given by the school, by way of reductions in tuition, amounted to less than 2% of tuition received and were distributed among only 2% of the students. The business man-

ager of the school testified that when gifts to the children themselves by foundations and interested parties are added, over one-eighth of the students receive scholarship aid averaging better than one-half the total cost of their education. This would indicate student aid, including direct gifts to the children, of roughly one-sixteenth, or 6¼%, of the total tuition charges, of which the major portion seems to be made up of gifts to the children, not to or by the school. (R. 58a, 59a, 73a, 74a).

In our opinion, the *Hill School Tax Exemption Case*, supra, does not overrule or even modify the ruling in the *Ogontz School Tax Exemption Case*, supra, that an institution is not a "public charity" entitled to exemption solely because it is founded by charity if it is not also maintained by charity in the sense that not all of its expenses are met by tuition charges and if the free scholarships granted by it do not amount to more than 10% of the total fees paid by students.

In applying the general principles set forth in the Constitution and the statute to the claims for exemption put forth by the seemingly infinite variety of private educational and other institutions, the courts have followed a path that seems none too straight or clearly defined to one who seeks to retread it. And the opinions which explain the decisions are often confusing guideposts, giving apparently contradictory directions. The opinion writers have tended to explain the decisions in terms of their own philosophical predilections in the debate that has gone on throughout the entire period of our national life, as to the degree of encouragement to be given to private beneficence by tax exemption or other public subsidy, between the advocates of governmental aid to private charity and those who feel that the interests of all the citizens are best protected by rigidly restricted aid at taxpayer's expense. Seldom is

an extreme position taken by either group and our decisions seem to be alternately drawn slightly to one side or the other in endeavoring to maintain the golden mean. This debate has been much sharpened in recent years by the great increase, on the one side, of charitable foundations and the progressive specialization and variation of the charitable and educational activities supported by them, and, on the other side, by the increasing necessities of the governmental bodies which are called upon to carry on projects of public welfare and convenience unthought of as governmental functions when the constitution and the statute were written. The increasing calls for expenditures by local governmental units, not always balanced by a corresponding increase in property values, has led to what appears to be growing resistance to new applications for exemption by institutions of benevolence different in some of their features from those which have been granted exemption before. And this in turn has compelled the courts to attempt ever closer analysis of the factual situations involved. This has been a pragmatic process of inclusion and exclusion and we feel bound to follow the line of the latest cases, erratic though it sometimes appears, rather than attempt to reach a solution by further meditation upon the relative importance of the demands of private benevolence and the expanded responsibilities of local government.

The admiration which we cannot help but feel for the activities of the Woods Schools and the benevolence of those who help to support and operate it, cannot blind us to the fact that in the crucial tests of help to those who cannot afford to pay for what they need by way of education, and maintenance of the institution by the disinterested benevolence of persons not the recipients of the institution's services, the Woods Schools resemble Harrisburg Academy, Moravian Seminary and

Ogontz School, where exemption was denied [1] more than Lafayette College, Episcopal Academy, Mercersburg College and Hill School where exemption was allowed.[2]

The appellant's able brief makes many other arguments as to why it should not be refused exemption. In addition to matters to which we have already adverted the appellant argues:

(1) That the objects of a purely public charity need not be the indigent; the disturbed and handicapped children whom the school trains are worthy objects of charity, regardless of their means, which are irrelevant.

(2) It is totally inconsistent to allow an exemption to a hospital, which charges full cost or even more to those who can pay, to help pay for treating indigents, research work and teaching programs, but to deny it to an institution like the appellant's school which is so similar.

(3) The appellant is still in its infancy as a public charity and should not be penalized because it grants scholarships to only 2% of its pupils, when the impressive public support it has already received indicates that it will be able to provide increased scholarship aid in the future and such aid is already being supplied directly to a large number of the students by foundations and private donors; the exemption should not be withheld now when its aid is most needed, only

[1] *Harrisburg v. Harrisburg Academy*, 26 Pa. Superior Ct. 252 (1904); *Moravian Seminary v. Northampton County*, 2 Lancaster Law Review 281 (1881); *Ogontz School Tax Exemption Case*, 361 Pa. 284, 65 A. 2d 150 (1949).

[2] *Northampton County v. Lafayette College*, 128 Pa. 132, 18 A. 516 (1889); *Episcopal Academy v. Philadelphia*, 150 Pa. 565, 35 A. 55 (1892); *Mercersburg College v. Mercersburg Borough*, 53 Pa. Superior Ct. 388 (1913); *Hill School Tax Exemption Case*, 370 Pa. 21, 87 A. 2d 259 (1952).

to be supplied later when the institution will be in much better financial condition.

(4) The use of donations and surplus to build the research center serves the public interest better than spending the same money on scholarship aid; if tuition had been reduced, the school might have received more applications but it could not have treated more students.

(5) Such institutions vary so widely in the efficiency of their operation that the test adopted by the lower court might well reward the inefficient institution with an exemption and penalize the efficient one.

(6) The *Ogontz School Tax Exemption Case*, if construed as we have done here, would overrule a long line of cases, beginning with *Donohugh's Appeal*, 86 Pa. 306, in 1878, including *Mercersburg College v. Mercersburg Borough*, supra. Furthermore the "dictum" in the *Ogontz* case has been repudiated in *West Indies Mission Appeal*, 387 Pa. 534, 128 A. 2d 773 (1957), and the *Hill School Tax Exemption Case*, supra.

(7) The lower court attempted to deduce a general theory of the nature of a charity from special cases involving the operation of dormitories by the YMCA and the Salvation Army.

(8) A proper deduction for depreciation and rental value of donated facilities would have eliminated the apparent profit of the school from operations.

(9) The school and the research institute cannot be realistically viewed as separate enterprises.

As to the first two objections, we need say no more than that the *Ogontz* case, supra, holds that when less than 10% of the students of an educational institution receive scholarship aid, the institution is not a purely public charity, and this holding has not been overruled. This applies also to the third objection. Whether the need is greater now than it will be later is not the test.

The tests under the *Ogontz* case are whether the institution is being maintained by charitable gifts and whether its services are being given to the students or a substantial portion of them below cost. When the appellant is able to meet those tests it will qualify for exemption since it fulfills the other prerequisites. Until it does meet them, the *Ogontz School Tax Exemption Case* bars the way to exemption.

The *Ogontz* case also renders irrelevant the fourth objection that the public interest is better served by the building of the research institute out of surplus than by using it for scholarship aid which cannot result in educating more students, but only perhaps in educating different ones. It is also to be noted that the idea of a quid pro quo to the public, discussed by Justice MAXEY in *Y. M. C. A. of Germantown v. Philadelphia*, 323 Pa. 401, 187 A. 204 (1936), has lost much of its importance by reason of the discussion of this factor by Justice CHIDSEY in the later case of *West Indies Mission Appeal,* supra.

The fifth objection raises a policy question for the legislature or the constitution-makers and cannot be decisive for us in the light of the *Ogontz* decision.

The sixth and seventh arguments required some discussion of the cases. The cases which the appellant contends are overruled sub silentio by the *Ogontz* case, as we see their argument, are chiefly *Donohugh's Appeal,* supra; and *Northampton County v. Lafayette College,* 128 Pa. 132, 18 A. 516 (1889); *Episcopal Academy v. Philadelphia,* 150 Pa. 565, 35 A. 55 (1892) and *Mercersburg College v. Mercersburg Borough,* 53 Pa. Superior Ct. 388 (1913).

*Donohugh's Appeal* was concerned with a library whose books could be read without charge by the public in the library building although a charge was made when books were taken out. Obviously a great many

of the objects of the institution's benevolence received it free of charge. In *Northampton County v. Lafayette College,* supra, the Court found that about one-half of the student body paid no tuition. In *Mercersburg College v. Mercersburg Borough,* the court found that tuition was much less than in other comparable schools and that the school supported itself from tuition receipts and income from endowment as well as income from non-exempt farm property. While no mention is made of any scholarship aid to students, it does not appear that the institution was self-supporting upon tuition charges alone. The Court said: "Without the constant reinforcement of the former charitable donations the school could not be maintained at all."

In *Episcopal Academy v. Philadelphia,* supra, the Court found that the tuition was much less than that charged by comparable institutions. It appeared from the master's findings that roughly 8% of the students paid half tuition and 9% paid no tuition. The Court said that "a purely public charity does not lose its character as such under the tax laws if it receives a revenue from the recipients of its bounty sufficient to keep it in operation . . . so long as the trustees of the school manage it as a charity, giving the benefit of what might otherwise be profit to the reduction of tuition fees or the increase of the number of free scholars in furtherance of the 'education of youth', the corpus of the trust, the schoolhouse, is entitled to exemption."

It seems clear to us that none of these cases are overruled by the holding in *Ogontz* that there can be no exemption if (1) tuition charges cover all cost of operation and (2) very few (less than 10%) of the students pay less than full tuition.

The two subsequent cases which the appellant cites as overruling or modifying the *Ogontz School* case are *Hill School Tax Exemption Case,* supra, and *West In-*

*dies Mission,* supra. Nothing in either of these cases modifies the two requirements that the institution must not pay its way wholly out of tuition or fees collected and that a substantial number of its beneficiaries must receive the services of the institution either free or substantially below cost. It is true that the *West Indies* case minimizes the importance of the quid pro quo principle. The fact that the State receives a quid pro quo in relief of a burden it would otherwise have to bear is, under the *West Indies* case, merely an element to be considered rather than a principle of exemption, but that does not in our opinion help the appellant in its quest for exemption in this case.

The appellant relies heavily upon the argument that in determining whether the school is maintained by tuition, a charge should be made against the profits of the school for rent of donated buildings, and that if such charge is made the appellant's surplus from operations is transformed into a deficit. Normally there should not be a charge for rental and depreciation both. There has been an allowance for depreciation made by the lower court in this case but it apparently felt that a further deduction for depreciation would be a duplication.

Appellant argues that the rental charge sought to be deducted by it is a net rental. Several of our cases have indicated that such a rental charge for a donated building is properly considered in determining whether the institution is self-sustaining from its tuition charges. *Mercersburg College v. Mercersburg Borough,* supra, *Episcopal Academy v. Philadelphia,* supra. However, simultaneous charges for depreciation and for rental which we may assume would be fixed to cover depreciation of the buildings on the land, cannot be allowed. We think the court below is correct in finding that the appellant, who has the burden of proof, has not shown that the depreciation charge and the fair

544

rental value sought to be deducted do not overlap. The appellant relies upon the testimony of Mr. Havens to the effect that a 7½% rental charge should be deducted. This would be sufficient to transform the profit into a deficit in four of the five years examined, if it were allowed in addition to depreciation. But there was no proof that the 7½% did not include depreciation, among the items upon which it was calculated. Mr. Havens said (R. p. 315a) that a private investor would not be satisfied with anything less than 7½% net on this type of investment where he was not responsible for paying taxes, maintenance or insurance. He further said that the investor would expect a return on his money based on the value of the buildings depreciated and the grounds of 7½%. There is nothing in this to indicate that this rental return does not include an item for annual depreciation, especially since he indicated specifically that he was excluding taxes, maintenance and insurance from his calculation. So far as this record goes the most the court could do for the appellant was to deduct the larger of the two items, depreciation or rental value. In each instance, strangely enough, rental value based upon 6%, according to appellant's figures, was less than the depreciation charged. This in itself may be an indication that the net rental of 6% does not include depreciation, but certainly under the figures submitted we cannot say, in opposition to the trial judge's conclusion, that the institution has carried its burden of proving that both the depreciation and the net rental figures submitted by it should be deducted in determining whether or not there was a profit from operations.

Finally it should be noted that even if the appellant had proved this point it would not enable it to surmount the barrier against exemption that is raised by its failure to donate any substantial part of its educational services to the recipients.

Appellant's final argument is that the court was in error in not treating the school and the research center as a single institution, thereby allowing an exemption to the whole. Nothing in the record indicates the kind of tight connection between the two as exists between hospitals and attached medical schools. It is true that the research center is aided by the proximity of the school but we are not convinced that this is the sort of case where the twenty acres and the building occupied by the research center can carry with them into the realm of exemption the three hundred twenty-six acres and eighty buildings of the self-supporting school.

In summary, we think the court below made a just disposition of this matter in exempting the research institute and its accompanying land but refusing to exempt anything further. It may well be that the school is progressing toward an exempt status. We do not believe that it has yet reached it.

The decree of the court below is affirmed.

---

DISSENTING OPINION BY WATKINS, J.:

I would reverse the court below on the ground that the Woods School is one institution and the division attempted was a fiction created by the court to evade the necessity of exemption. Without the division this case is controlled by *Hill School Tax Exemption Case*, 370 Pa. 21, so the school is entitled to charitable exemption from local taxation on all its real estate.