Hill School Tax Exemption Case.

Argued January 14, 1952. Before DREW, C. J., STERN, STEARNE, BELL, CHIDSEY and MUSMANNO, JJ.

*C. Edmund Wells* and *Carroll L. Rutter,* for appellants.

*Edward A. G. Porter,* with him *Saul, Ewing, Remick & Saul, Franklin L. Wright* and *Wright, Mauck, Hawes & Spencer,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, March 24, 1952:

The question presented is whether The Hill School, a Pennsylvania non-profit educational corporation, has been founded, endowed and maintained to a sufficient degree by public or private charity to entitle it to tax exemption under Article IX, Section 1, of the Constitution of Pennsylvania, and Article II, Section 204, of the Act of May 22, 1933, P. L. 853, amended by Section 1 of the Act of May 3, 1943, P. L. 158, 72 PS 5020, 204. The court below decided that it had so qualified. The borough and the school district have appealed.

The Constitution, supra, permits the General Assembly, by general laws, to: ". . . exempt from taxation public property used for public purposes, actual places of religious worship, places of burial not used or held for private or corporate profit, *institutions of purely public charity,* and real and personal property owned, occupied, and used by any branch, post, or camp of honorably discharged soldiers, sailors, and marines." (emphasis supplied) In pursuance to such authority the Legislature enacted the statute of 1933, supra, which

provides: "The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit: . . . (c) All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence, or charity, with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed, and maintained by public or private charity: Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose."

While the Act of 1933, supra, exempts "universities, colleges, seminaries, academies, associations and institutions of learning", in order for such statutory exemptions to be within the terms of the Constitution, necessarily they must relate solely to *"institutions of purely public charity."*

It requires no citation of authority to demonstrate that a private hospital founded and maintained by a group of doctors for their own convenience, with .or without profit, would not qualify for such tax exemption. Neither would a private school founded and maintained by any particular group, with or without profit, solely for the benefit of their own children or their nominees. Such institutions would not constitute institutions of "purely public charity." But it is equally apparent that charity or benevolence is not limited in scope to feeding, clothing and housing the indigent. To assist one in helping himself may be of even greater importance. Our universities, institutes of technology and research laboratories present fields of inestimable benefit to man.

The initial inquiry is: what constitutes a charity? Bispham, in his Principles of Equity (Tenth Edition), section 118, states that the origin of charitable uses is

of great antiquity, and that at one time it was supposed, both in England and America, that charitable uses owed their origin in the year 1601 to the Statute of 43 Elizabeth, c. 4. Mr. Bispham asserts, however, that instances of charitable uses existed long prior to that enactment. While the Statute of Elizabeth, supra, was never in force in Pennsylvania, its principles are part of the common law: *Cresson's Appeal*, 30 Pa. 437, 450; *Fire Insurance Patrol v. Julia F. Boyd*, 120 Pa. 624, 15 A. 553. Cf. *Vidal v. Girard's Executors*, 2 How. 127, (U. S.). Among the charitable uses enumerated in the Statute of Elizabeth, are: ". . . for maintenance of . . . schooles of learninge, free schooles and schollers in univ.-sites. . .". Stated in more modern language it may be perhaps said: *for the promotion of education and for the maintenance of schools of learning.*

It is difficult to give a definition of a charitable use which is both accurate and comprehensive. In *Fire Insurance Patrol v. Julia F. Boyd*, supra, p. 645, the definition of Justice GRAY of the Supreme Court of Massachusetts, in *Jackson v. Phillips*, 14 Allen 539, 556 was adopted by this Court. It is: "A charity, in the legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government."

In *Funk Estate*, 353 Pa. 321, 45 A. 2d 67, speaking through Mr. Justice STERN, we said, p. 323: ". . . attempts to give to 'charity' a reasonably precise connotation in the law have been generally unsuccessful. 'The attempt to formulate a definition that is so specific as to cover every public charity, is sure to prove a

failure. Charitable uses take such varied forms that a specific enumeration of the classes or objects is necessarily defective. The scope of a charitable use is well defined in Perry on Trusts, cited in Ould v. Washington Hospital, 95 U. S. 303, "A charitable use, where neither law nor public policy, forbids, may be applied to almost anything that tends to promote the well-doing and well-being of social man." ': Centennial and Memorial Association of Valley Forge, 235 Pa. 206, 210, 211, 83 A. 683, 684. 'The word "charitable", in a legal sense, includes every gift for a general public use, to be applied, consistent with existing laws, for the benefit of an indefinite number of persons, and designed to benefit them from an educational, religious, moral, physical or social standpoint. In its broadest meaning it is understood "to refer to something done or given for the benefit of our fellows or the public." ': Taylor v. Hoag, 273 Pa. 194, 196, 116 A. 826. 'Charitable uses may be unlimited in number and are not to be determined by the application of any narrow criterion. Whether a purpose is charitable must be ascertained from a consideration of all surrounding circumstances. A design to achieve objects beneficial to the community is common to all charitable purposes. . . . The concept of a charity is continually broadening.': Tollinger Estate, 349 Pa. 393, 397, 37 A. 2d 500, 502. 'A purpose is charitable if its accomplishment is of such social interest to the community as to justify permitting the property to be devoted to the purpose in perpetuity. There is no fixed standard to determine what purposes are of such social interest to the community; the interests of the community vary with time and place. . . . As to what other purposes are of such interest to the community as to be charitable, no definite rule can be laid down.': Restatement, Trusts, §368, comment b."

Having established that the institution is a "charity" the next consideration is whether it is *"purely public"*. In *Donohugh's Appeal,* 86 Pa. 306, in examining the exemption of the ancient Library Company of Philadelphia from city taxes, it was decided that an "institution of purely public charity" is not necessarily one solely controlled and administered by the state, but extends to private institutions for purposes of purely public charity and not administered for private gain. In *The Burd Orphan Asylum v. The School District of Upper Darby,* 90 Pa. 21, we held that a purely public charity may relate to definite groups or classes. Any institution engaged in education of youth is a *"public charity"* if its doors are open to the public generally or a well defined class thereof, subject to reasonable entrance requirements. In *Episcopal Academy v. Philadelphia,* 150 Pa. 565, 573, 25 A. 55, this Court said: ". . . whatever is gratuitously done or given in relief of the public burdens or for the *advancement of the public good* is a *public charity.* In every such case as the public is the beneficiary, the charity is a public charity . . . *The education of youth and the support of schools are for the advancement of public good,* and money given for such purposes was recognized in England as given for a charitable use, before the statute of 43 Elizabeth." (Emphasis supplied)

The word "purely" as used in the Constitution in the phrase "purely public charity" means that the institution must be entirely free from private profit motive. In *The Burd Orphan Asylum v. The School District,* supra, we said, p. 35: " '. . . when the charity is public, the exclusion of all idea of private gain or profit is equivalent in effect to the force of "purely," as applied to public charity in the constitution.' "

In *Donohugh's Appeal,* supra, p. 314: "The true test is to be found in the objects of the institution. Are

they entirely for the accomplishment of the public purpose, or have they some intermixture of private or individual gain?"

In *Episcopal Academy v. Philadelphia,* supra, p. 573: "As no private or pecuniary return is reserved to the giver or any particular person, but all the benefit resulting from the gift or act goes to the public, it is a 'purely public charity', the word 'purely' being equivalent to the word 'wholly'."

A purely public charity does not cease to be such where it receives some payment for its services. Thus a hospital may be such a charity where it maintains both private patient and ward service, its facilities being available to all: Cf. *McConnell v. Williams,* 361 Pa. 355, 357, 65 A. 2d 243. The dormitories of the Pittsburgh Salvation Army are not subject to tax merely because the institution makes a charge for the use of its facilities, at a figure which clearly is not commercial: *Salvation Army v. Allegheny County,* 367 Pa. 373, 80 A. 2d 758. And by the same reasoning, a university, school or educational institution which makes a tuition charge to its students, does not *thereby alone* release and relinquish its privilege to tax exemption.

Where, however, a public charity invades the commercial field and engages in business, that portion of the charity's assets so employed is not exempted from taxation; as: where a hospital operates farms for profit: *The Contributors to the Pennsylvania Hospital v. The County of Delaware et al.,* 169 Pa. 305, 32 A. 456; where a Sunday School Union conducts a book store for profit: *American Sunday School Union v. City of Philadelphia,* 161 Pa. 307, 29 A. 26. Cf. *Pennsylvania Co. for Insurances on Lives and Granting Annuities, Trustee, v. Philadelphia et al.,* 346 Pa. 406, 31 A. 2d 137. In *Young Men's Christian Association of Germantown v. Philadelphia,* 323 Pa. 401, 187 A. 204, the corpora-

tion entered into a business venture by renting rooms to any persons, including transients, at a price higher than that charged by boarding houses in the vicinity—thus entering into competition with rooming houses and hotels. This Court held, that the portion of the building so used was subject to taxation.

Appellants place great reliance upon the *Ogontz School Tax Exemption Case*, 361 Pa. 284, 65 A. 2d 150. That case does not rule the present one. *There the corporation was not in fact entirely free from private profit motive.* The owner sold the school taking back in partial payment mortgages and bonds. *A debt of $550,000 was liquidated from the profits of the school.* The school also purchased from its profits a summer camp for $32,000. The tuition charged was sufficient to cover the entire cost of student aid to some of the students, and still leave a substantial profit. The former owner received a salary of $20,000 per year for some years, but which was later reduced to $8,000 a year. She was also given the use of a house and maintenance. Without the review in detail of its financial structure and administration, it will suffice to state that the findings of fact of the court below in that case did not establish that the Ogontz School qualified for the tax exemption claimed as a "purely public charity".

Whether the appellee, The Hill School, is a "purely public charity" entitled to tax exemption, is a mixed question of fact and law. Precedents are but of slight value under the varying circumstances in other institutions.

President Judge KNIGHT, the hearing judge, made findings of fact in his adjudication, which were adopted by the court in banc. He found that the predecessor of The Hill School was the Meigs School which was founded in 1851 and successively conducted as a private school by the Reverend Matthew Meigs, his son and grandson until 1920. At this date a non-profit cor-

poration was incorporated under the laws of this Commonwealth *by the alumni of the school.* It has since been conducted by the alumni as a non-profit corporation. All of the assets of the Meigs School were transferred to The Hill School by the Meigs family. The court found as a fact (p. 283a) :

"In consideration of these assets, the new corporation issued to the Meigs family, $550,000 interest bearing bonds of the corporation, and the corporation also assumed the debts of the School, amounting to $688,000. so that the cost of the assets of the Meigs School to the corporation, was $1,238,000.

"The new corporation thus obtained the assets of the Meigs School for roughly $475,000. less than the book value, and $1,000,000. less than the appraised value. There may be some question if the value of the assets equaled these figures, but whatever the equity above the consideration paid by the corporation may have been, it represented a gift by the Meigs family to the corporation. The $550,000 in bonds, with the exception of $7,000. has been liquidated either by purchase or payment by the corporation *through gifts of money by the Alumni and friends of the School.* (emphasis supplied)

"The evidence does not disclose with what funds the $688,000. of debts of the Meigs School were liquidated, but all deficits of the Hill School have been met by gifts from the Alumni and friends of the School, and it is a fair assumption that the $688,000. of debt, was paid either directly or indirectly by gifts to the Hill School."

It therefore clearly appears that The Hill School was *founded* in whole or great part by charitable donations.

The court also made the following findings of fact (p. 287a) : "During the twenty-nine years that the corpora-

tion has operated the School, it has received from Alumni and friends gifts, endowment funds and income received thereon, the sum of $4,554,231.33. Of this amount $1,009,536.94 is invested in bonds, stocks, etc., $2,504,-248.60 was used for additions to grounds, building and equipment, $192,621.83 was used for reduction of school liability on notes, and other debts, and $847,-694.39 for free working funds."

P. 291a: "The cost of maintenance and instruction at Hill School is greater than the tuition price set by the trustees. In the twenty-nine years of its existence, the Hill School in only three years, has had a surplus income over expenses: in all other years the School has been operated at a loss. Forty-nine per cent of the students receive student aid. The tuition fees pay about eighty-two per cent of the cost of operating the School, the deficit is made up from income from endowments, investments and gifts."

P. 292a: ". . . no one receives any profit or individual gain, the trustees serve without pay, the headmaster and teachers receive salaries in line with those paid by similar schools, both public and private. Admission is open to all who can meet the requirements of health, character and scholarship, irrespective of race, color or creed."

We could not profitably add to the careful analysis of the testimony, citation of authorities, and conclusions of Judge KNIGHT, with all of which we are in complete accord. We decide that The Hill School, appellee, as now organized and operated, is an institution of purely public charity, entitled to the claimed tax exemption under the Constitution of Pennsylvania and the Act of 1943, supra.

The decree is affirmed at appellants' cost.