## University Club, Appellant, *v*. Pittsburgh.

Argued October 9, 1970. Before BELL, C. J., JONES, COHEN, EAGEN and ROBERTS, JJ.

*Ralph H. German,* with him *William S. Smith,* and *Houston, Cooper, Speer & German,* for appellant.

*Frederick A. Boehm,* First Assistant City Solicitor, with him *Marion K. Finkelhor,* Assistant City Solicitor, and *Ralph Lynch, Jr.,* City Solicitor, for appellee.

OPINION BY MR. JUSTICE EAGEN, November 12, 1970:

In this action of assumpsit, the University Club of Pittsburgh (Club) sought a refund of taxes paid the

564

city of Pittsburgh (City) which allegedly were not
due. The case was tried nonjury, and judgment was
entered in favor of the defendant-city. Subsequently,
exceptions to the adjudication were dismissed, and a
final judgment entered. The University Club appeals.

The material facts are undisputed.

The appellant is a nonprofit corporation operating
as a private social club, with a membership of over two
thousand. The facilities are located on University
Place in the Oakland section of Pittsburgh. Adjacent
to its clubhouse the Club has provided an uncovered
parking lot for seventy cars which only members are
allowed to utilize. A flat rate of eighty-five cents is
currently assessed every time a member parks his car
in the lot. This rate is comparable to short-term park-
ing rates in the area but is less than all-day parking
rates in the Oakland section. The fee is not immedi-
ately collected; instead the amount is added to the
member's bill.

In 1962 the city of Pittsburgh levied a parking tax
of 10% on the gross receipts with respect to transac-
tions involving the parking of motor vehicles at com-
mercial parking places. The legislation, Ordinance No.
434 of 1962, subsequently re-enacted, imposes the tax
on "all transactions of each operator with respect to
each commercial parking place . . . ." Transaction is
defined as "the parking or storing of a motor vehicle
at a commercial parking place for a consideration."
"Commercial parking place" is defined as "any place
within the City, whether wholly or partially enclosed
or open, at which motor vehicles are parked or stored
for any period of time in return for a considera-
tion . . ." The only enumerated exceptions are parking
lots operated in connection with residences, apartments,
hotels, and trailer courts.

The appellant contends that the parking lot ordinance
is applicable only to transactions where the operator is

in the parking lot business. It is urged that since the Club's lot is closed to the general public and is not operated at a profit, it cannot be said the Club is engaging in commercial parking transactions and therefore the ordinance is not applicable to it.

The appellant's attack on this ordinance by way of the principles of statutory construction is a confusion which obscures the fundamental issues presented here, namely (1) did the City have the power (legal authority) to tax the appellant in the manner in which it did; and, (2) did it intend to so do.

That the City had the power to tax the appellant in the manner in which it did we think is evident from The Local Tax Enabling Act of June 25, 1947, P. L. 1145, re-enacted and clarified by Act of December 31, 1965, P. L. 1257, 53 P.S. §6902 (1970 Supp.) (The Tax Anything Act). The act conferred upon political subdivisions the power to levy taxes upon all subjects of taxation which the Commonwealth has the power to tax but which it has not so exercised. Section 2(7) of the 1965 act contains the only restriction on taxing private social organizations: "Such local authorities shall not have authority by virtue of this act: (7) to levy, assess or collect a tax on membership in or membership dues, fees or assessment of charitable, religious, beneficial or non-profit organizations . . . ."

Since parking transactions for which a consideration is paid are nowhere mentioned in the exception, it is a reasonable assumption that they are proper subjects of taxation.

Did the City intend to tax lots operated by non-profit organizations?

The City, as it had the right to do, provided its own set of definitions to aid in the understanding and interpretation of its legislation.

Perhaps its definition of "commercial" is not literally what one would find in Webster's but it is now late

in the day to challenge, even indirectly, Justice STERN'S oft-cited dictum in *Sterling v. Philadelphia*, 378 Pa. 538, 542, 106 A. 2d 793 (1954) : "A legislative body may, in a statute or ordinance, furnish its own definitions of words and phrases used therein in order to guide and direct judicial determination of the intendments of the legislation although such definitions may be different from ordinary usage; it may create its own dictionary to be applied to the particular law or ordinance in question."

The definition of a "commercial" parking lot urged by the Club as one operated for profit and open to the public is not the definition of commercial parking places contained in the city ordinance. It is the imposition of a charge for parking that makes a parking lot "commercial" under the clear language of the ordinance.[1] "The ' "legislature must be intended to mean what it has plainly expressed . . . ." ' (Orlosky v. Haskell, 304 Pa. 57, 62, 155 A. 112)." *Commonwealth v. Rieck Inv. Corp.*, 419 Pa. 52, 59, 213 A. 2d 277 (1965). "[Where] the language is clear and free from ambiguity . . . we may not disregard or change it by construction. Statutory Construction Act of May 28, 1937, P. L. 1019, §51." *Commonwealth v. Harrison*, 183 Pa. Superior Ct. 133, 137, 130 A. 2d 198 (1957). It is not the function of this Court to change the plain language of the ordinance.

---

[1] Appellants admit that motor vehicles are parked in the Club lot in return for a consideration but submit that the lot is operated on a nonprofit basis, indeed at a loss. Little, if any, weight should be assigned to the basis of operation here since cross-examination revealed a conscious unconcern by the Club as to how the lot operated. The manager, Mr. Schleicher, testified: "If we can break even fine, if we lose a little bit—Q. That's fine too? A. Yes."

The only loss the Club accountant could substantiate for the five year period during which the tax was in effect up to the time of trial was a loss of $391 in 1968.

Appellant contends that its case is on all fours with the decision in *City of Pittsburgh v. University of Pittsburgh*, 114 P.L.J. 237 (1965), affirmed without opinion 208 Pa. Superior Ct. 718, 219 A. 2d 364 (1966), a case which construed Ordinance 434, involved here, also.

In the *Pitt* case, supra, certain campus parking lots were restricted solely to faculty and employees of the University, and a small charge was made for their use. However, two of the lots were available for public use on days of athletic events. The court, WESSEL, J., held that these Pitt lots were not "commercial" parking lots and not subject to the Pittsburgh Parking Tax Ordinance except with respect to the receipts at the two lots received from the general public in connection with the sports events.

Appellant contends that the difference between the taxable and nontaxable portions of the *Pitt* case, supra, was the type of activity, i.e., open to the general public or restricted to faculty and employees. But even this distinction does not help appellant because the decision in the *Pitt* case turned on the activity of a special sort of actor, that of an eleemosynary educational institution, a definition which does not fit the University Club.[2]

If anything the *Pitt* case, supra, illustrates that the City was (and is) attempting to enact as broad a taxing measure as possible. Thus it fell to the court to carve the exception in this broad language for elee-

---

[2] In the *Pitt* case, supra, Judge WESSEL at page 240 states as follows: "We feel that the position taken by the Supreme Court in the Hill School case, [370 Pa. 21 (1952)] governs the case at bar, that is to say, the University of Pittsburgh, an eleemosynary institution, does not cease to be such where it receives some payment for its services and, therefore, is not subject to tax merely because the institution makes a charge for the use of its facilities at a figure which clearly is not commercial and which use is confined to the faculty and employees of the University."

mosynary institutions in order to remain consistent with state legislative policy of tax exemption for places of purely public charity.

There is no reason in public policy why special treatment should be accorded to private social clubs in matters like the one before us.

Here the preamble to the ordinance explained the imposition of the tax in terms of the traffic congestion from commercial parking lots and the problems presented thereby to municipal services. From the location and use of the appellant's lot, outlined in the record, it is clear that the very burden on the municipality noted in the Ordinance is applicable to the parking lot in question here.[3]

The levy imposed by the city of Pittsburgh differs in no important particulars from that upheld by this Court in *Blauner's Inc. v. Philadelphia*, 330 Pa. 342, 198 A. 889 (1938). There it was held that the sale of food by a club to its members was subject to sales tax just as food served in a public restaurant. There the sales tax was imposed on the *transaction* whereby property was acquired; here the Parking Tax is by terms of the Ordinance, "a tax upon the transactions involved in parking motor vehicles at commercial parking places."

As to appellant's argument that the revenues received for parking the automobiles of full-time residents of the Club falls under the exception outlined in the ordinance as to hotels and apartments, we need not speculate, since no evidence was presented in the court below as to how much this revenue amounted to.

Nor need we reach the question of whether or not the ordinance involved violates Art. III, §3 of the Penn-

---

[3] The record shows that the Club administration's study of its parking facilities showed a capacity use of the lot on the average of five times a week during the luncheon hours and three times per week during dinner hours.

sylvania Constitution, since appellant's position in this regard is based on the premise that its parking lot is not a "commercial parking place." As pointed out before, the ordinance itself controls our determination of what constitutes a "commercial parking place" for the purposes of the taxation imposed.

Judgment affirmed.

Mr. Justice O'BRIEN and Mr. Justice POMEROY took no part in the consideration or decision of this case.