533 A.2d 828

Ski Roundtop, Inc., t/a Ski Liberty, Appellant *v.*
Fairfield Area School District, Appellee.

Argued September 15, 1987, before Judges CRAIG,
MacPHAIL, and Senior Judge NARICK, sitting as a panel
of three.

*Albert G. Blakey, III, Blakey, Yost, Bupp & Schaumann,* for appellant.

*John A. Gill, Cleckner and Fearen,* for appellee.

OPINION BY JUDGE CRAIG, November 23, 1987:

Ski Roundtop (taxpayer) appeals the trial court's grant of summary judgment in favor of Fairfield Area School District (school district), in the amount of $131,884.02, for tax liability.

On April 19, 1982, the school district enacted the "Fairfield Area School District Amusement Tax Resolution of 1982" pursuant to the Local Tax Enabling Act.[1] The tax resolution imposed a tax equal to 5% of the price of "admissions" to "amusements" for those doing business within the school district.

The tax resolution defined "admission" as "the regular monetary charge or charges of any character whatsoever . . . for the privilege of attending, viewing, engaging in or participating in any amusement." The tax resolution defined "amusement" to include "skiing, including but not limited to the sport of skiing itself, the use of ski lifts and tows, the rental of ski equipment, and ski lessons."

The taxpayer operates a ski resort within the school district. The taxpayer charges a fee for entering the ski area and additional fees for lift tickets, ski rental and ski lessons. Beginning in March, 1984, the taxpayer refused to pay the amusement admissions taxes which the school district claimed under the tax resolution.

---

[1] Section 1 of the Local Tax Enabling Act, Act of December 31, 1965, P.L. 1257, *as amended,* 53 P.S. §6901 *et seq.*

In October, 1984, the legislature amended section eight of the Local Tax Enabling Act.[2] The amendment, which added subsection (9), provides that any taxes levied under the Local Tax Enabling Act on admissions to ski facilities shall not exceed a rate of 10%, and "the tax base upon which the tax shall be levied shall not exceed forty percent of the cost of the lift ticket", and that the cost of the lift ticket "shall include all costs of admission to the ski facility."

On November 5, 1985, the school district filed a complaint in the Court of Common Pleas of Adams County to recover taxes which the school district claimed were owed by the taxpayer under the tax resolution. The taxpayer filed an answer and new matter asserting (1) that the tax resolution was not valid because it exceeded the taxing authority given to the school district in the Local Tax Enabling Act, and (2) that if the tax resolution was valid, only fees for entering the ski area could be subject to the tax resolution.

In May of 1986, both the school district and the taxpayer filed motions for summary judgment. An itemized statement of taxpayer's income from the various ski-related activities was made a part of the record by stipulation of the parties on November 12, 1986.

Following an evidentiary hearing, Judge SPICER entered judgment for the school district in the amount of $131,884.02, calculated by the trial court as follows. From April, 1984 until December 10, 1984 the 5% tax was applied to total receipts from admissions, lift tickets, ski rentals, and ski lessons. After the effective date of the enactment of the amendment to section eight of the Local Tax Enabling Act, December 11, 1984, the 5% tax was applied to 40% of the price of the lift tickets.

---

[2] Section 3, Act of Oct. 11, 1984, P.L. 885, *as amended*, 53 P.S. §6908.

## Tax Liability Before the Amendment

The first question is the validity of the tax resolution before the amendment of section eight of the Local Tax Enabling Act. The issue is whether the school district exceeded its authority to levy an amusement admissions tax, as delineated in the Local Tax Enabling Act, when it enacted a tax resolution imposing a tax on lift tickets, ski rentals, and ski lessons. We conclude that the tax resolution, as enacted by the school district, did not exceed the taxing authority granted to the school district in the Local Tax Enabling Act. Accordingly, we will affirm the judgment of the trial court as entered for the period before December 11, 1984.

The Local Tax Enabling Act provides in pertinent part as follows:

The duly constituted authorities of the following political subdivisions, . . . and school districts of the fourth class, . . . may, in their discretion, by ordinance or resolution, for general revenue purposes, levy, assess and collect . . . such taxes as they shall determine on personal transactions, occupations, privileges, subjects and personal property within the limits of such political subdivisions. . . . Such local authorities shall not have authority by virtue of this act:

(1) To levy, assess and collect . . . any tax . . . on a privilege, transaction, subject, occupation or personal property which is now or does hereafter become subject to a State tax . . . ;

(3) Except on sales of admissions to places of amusement. . . . to levy, assess or collect a tax on the privilege of employing such tangible property as is now or does hereafter become subject to a state tax. . . .

53 P.S. Section 6902.

The act clearly prohibits local authorities from levying a tax upon any transactions which the state has taxed. The act also prohibits local authorities from taxing the privilege of employing tangible property which is subject to a state tax, with the exception of the sale of admissions to amusements.

The school district enacted the tax resolution as a tax on the admissions to amusements pursuant to the Local Tax Enabling Act. The tax resolution included its own definition of what constituted an amusement. Specifically the tax resolution stated:

(b) The term 'amusement' shall mean all manner and forms of entertainment including, but not limited to, . . . skiing, including but not limited to the sport of skiing itself, the use of ski lifts and tows, and the rental of ski equipment; and ski lessons. . . .

The taxpayer's position is that the tax resolution's definition of amusement, which includes lift tickets, ski rental and ski lessons, renders the resolution invalid. The rationale behind this argument is that the Local Tax Enabling Act, before the amendment, only authorized a taxing authority to tax the sale of admissions to amusements and that the sale of lift tickets, ski rental and ski lessons are not the sale of admissions to amusements as contemplated by the statute.

Crucial to the determination of the validity of the tax resolution is whether the local authority can establish its own definition of amusement in the absence of a definition by the legislature.

· Although a municipality cannot levy a tax unless the power to do so is plainly and unmistakably conferred by the legislature, *Appeal of Harrisburg School District*, 53 Pa. Commonwealth Ct. 299, 417 A.2d 848 (1980), a local authority, to the extent not barred by statute, may provide its own set of definitions in its legislative enactments:

> A legislative body may, in a statute or ordinance, furnish its own definitions of words and phrases used therein in order to guide and direct judicial determination of intendments of the legislation although such definitions may be different from ordinary usage; it may create its own dictionary to be applied to the particular law or ordinance in question.

*University Club v. City of Pittsburgh,* 440 Pa. 562, 566, 271 A.2d 221, 222-23, (1970), quoting *Sterling v. Philadelphia,* 378 Pa. 538, 542, 106 A.2d 793, 795 (1954).

Recently, in *City of Harrisburg v. Home Builders Association of Metropolitan Harrisburg,* 96 Pa. Commonwealth Ct. 549, 507 A.2d 1307 (1986), this court considered a question similar to the one raised in this appeal. In that case Harrisburg enacted an amusement admissions tax pursuant to the Local Tax Enabling Act. The Harrisburg tax defined an amusement to include trade shows and craft shows. The association paid admission amusement taxes for its Home Builders Show in 1983 and 1984, but subsequently filed suit to recover the taxes paid, alleging that the Home Builders Show did not constitute an amusement as the term is commonly used. This court, following the rationale of *University Club,* held that the city had the right to provide its own operative set of definitions so long as those definitions were not so "extreme as would render the language in question senseless." *Id.* 507 A.2d at 1309.

Defining the concept of charges for admission to the "amusement" of skiing to include the costs of ski-lift use and equipment rental, as well as fees for lessons, does not amount to a senseless extension of the concept. Although the fee for admission to the premises will make that amusement entirely available to the patron who desires to participate only as a spectator, and also to the active participant who possesses both skill and the

needed equipment and is willing to proceed uphill without aid,[3] for other active patrons full entry upon the sport will come only after they rent the needed equipment, purchase transportation to the top of the slopes and, if they are inexperienced, pay for guidance in descending the slopes safely and enjoyably.

Accordingly, the trial court's decision with respect to the tax liability before the statutory amendment was correct.

## Tax Liability After the Amendment

We now turn our attention to the portion of the judgment which relates to the time period following the legislature's amendment of the Local Tax Enabling Act.

The verbatim terms of the amendment, which became effective on December 11, 1984, are as follows:

No taxes levied under the provisions of this act shall be levied by any political subdivision on the following subjects exceeding the rates specified in this section:

(1) . . . . (9) On admissions to ski facilities, ten percent. The tax base upon which the tax shall be levied shall not exceed forty percent of the cost of the lift ticket. The lift ticket shall include all costs of admission to the ski facility.

53 P.S. Section 6908(9)

The amendment plainly indicates the legislature's intent to place a ceiling on the amount a ski facility can be taxed. The amendment provides that any tax on admission to a ski facility, passed pursuant to the Local Tax Enabling Act, may not exceed 40% of the cost of the lift ticket.

---

[3] At the November 13, 1986 evidentiary hearing, the manager of the ski facility testified that he had observed many people ski who had only purchased an admissions ticket.

In light of this restrictive amendment, the tax base used in calculating the taxes owed under the tax resolution is clearly limited to 40% of the lift ticket. Thus, under the amendment, if an individual enters the facility, purchases a lift ticket and rents skis, the school district cannot recover more than 5% of 40% of the cost of the lift ticket.[4]

The trial court properly calculated the tax owed, after the amendment of the Local Tax Enabling Act, as 5% of 40% of the total receipts of the sale of lift tickets.

Accordingly, we affirm.

### ORDER

NOW, November 23, 1987, the order of the Court of Common Pleas of Adams County at No. 85-S-747 dated November 13, 1986 is affirmed.

---

[4] In this case, the post-amendment tax computation of the trial court apparently did not include tax on admission fees paid by persons who did not purchase a lift ticket. Nevertheless, because the school district has not cross-appealed or otherwise raised that issue, an affirmance is in order.