551 A.2d 672

Biosciences Information Service, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Biosciences Information Service, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Argued September 14, 1988, before President Judge CRUMLISH, JR., and Judges CRAIG, DOYLE, BARRY, COLINS, PALLADINO and MCGINLEY.

*Joseph C. Bright, Jr.,* with him, *Morris R. Brooke, Drinker, Biddle & Reath,* for petitioner.

*Bartholomew J. DeLuca, Jr.,* Deputy Attorney General, with him, *LeRoy S. Zimmerman,* Attorney General, for respondent.

OPINION BY JUDGE COLINS, December 22, 1988:

Biosciences Information Service (BIOSIS) has filed exceptions to a decision rendered by a panel of this Court in *Biosciences Information Service v. Commonwealth,* 101 Pa. Commonwealth Ct. 384, 516 A.2d 434 (1986) (*BIOSIS III*), which declared that BIOSIS does not fulfill the criteria of a purely public charity and, therefore, is not entitled to the public charity exemption pursuant to Section 204(10) of the Tax Reform Code of 1971 (Code).[1] Consequently, *BIOSIS III* affirmed, for the second time, two orders of the Board of Finance (Board) which, likewise, affirmed use tax assessments imposed by the Department of Revenue (Department) for two tax audit periods.

---

[1] Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §7204(10).

This matter involves two consolidated petitions for review of determinations of the Board. BIOSIS initially petitioned this Court in 1985 following the Board's affirmance of the Department's imposition of use tax assessments against BIOSIS. By an opinion dated July 12, 1985, we affirmed the Board's orders. Subsequently, BIOSIS filed exceptions[2] challenging this Court's findings of fact, and its failure to make findings of fact and conclusions of law. On reargument before this Court en banc, BIOSIS' exceptions were sustained and the 1985 order was vacated. Accordingly, a new opinion was ordered, including findings of fact, based upon the record, to resolve the legal issues involved.

The findings of fact which were made by this Court in *BIOSIS III* were based upon a partial stipulation of facts made by the parties, as well as upon an evidentiary hearing which was held November 14, 1984. These findings of fact are as follows:

1. BIOSIS is a nonprofit corporation organized under the laws of the District of Columbia, with its headquarters located at 21st and Arch Streets, Philadelphia, Pennsylvania.

2. BIOSIS obtains and abstracts biological sciences literature from around the world. The abstracts are compiled and indexed into manuscripts, then bound and delivered to interested institutions and individuals.

3. BIOSIS receives, free of charge, publications from around the world dealing with biological sciences. Many scientists donate their services to BIOSIS.

4. BIOSIS publishes reference data and maintains the data as part of its permanent library. Additionally, BIOSIS performs searches of the library upon request.

---

[2] These exceptions were filed pursuant to Pa. R.A.P. 1571(i).

5. Subscribers to BIOSIS publications include government agencies, medical schools, research laboratories, hospitals and individual doctors.

6. BIOSIS charges for its publications, and for computerized searches of its library.

7. BIOSIS also conducts meetings and seminars designed to educate the public regarding the availability and use of reference data in the fields of biological science. BIOSIS does not charge for these seminars.

8. BIOSIS does no research or testing of its own, nor does it write any of the articles which it compiles.

9. The fee charged by BIOSIS for its publications is approximate to the actual costs incurred by BIOSIS to compile the periodicals.

10. During three of the four full years BIOSIS was audited, BIOSIS accumulated a profit. In 1974, BIOSIS' excess revenues over expenses was $437,118. In 1976, BIOSIS' excess revenues over expenses was $56,915. In 1977, BIOSIS' excess revenues over expenses was $712,146.

11. The Department audited BIOSIS for the periods from January 1, 1974 through October 31, 1977, and from January 1, 1975 through 1978. As a result, BIOSIS was issued tax assessments in the amounts of $196,278.05 and $97,888.03. These assessments related to BIOSIS' purchase of office equipment and materials such as copiers, typewriters, computers and maintenance items.

12. BIOSIS filed timely petitions with the Board of Appeals of the Department, contesting the assessments. The Board of Appeals reassessed BIOSIS' use tax liability for the period from January 1, 1974 through October 30, 1977 to $163,232.47. The assessment for the period

from January 1, 1975 through June 30, 1978 was reduced to $96,897.51.

13. BIOSIS filed timely petitions for review with the Board of Finance and Revenue, again contesting the assessments.

14. The Board of Finance and Revenue affirmed the assessments.

15. BIOSIS filed timely petitions for review with this Court from the orders of the Board of Finance and Revenue for each of the two audit periods.

*Id.* at 386-388, 516 A.2d at 434-435.

In this appeal, BIOSIS still maintains that it is a purely public charity and is, therefore, entitled to a tax exempt status. BIOSIS attacks this Court's 1986 decision by asserting that the panel failed to consider the stipulated facts in reaching its conclusion that BIOSIS is not a purely public charity. Once again, BIOSIS argues that it does meet the criteria used to determine whether an entity is a purely public charity and is, therefore, entitled to an exclusion from the payment of sales and use tax pursuant to Section 204(10) of the Code. Accordingly, BIOSIS contends that the panel erred in finding otherwise.[3]

Section 204(10) of the Code excludes from sales and use taxes, "[t]he sale at retail or use by (i) any charitable organization, volunteer firemen's organization or non-profit educational institution. . . ." This exemption derives from the Pennsylvania Constitution, article VIII,

---

[3] The Commonwealth also filed exceptions to *BIOSIS III*. However, the Commonwealth's exceptions related only to the portion of this Court's 1986 order which remanded the case to the Board. These exceptions have been disposed of, however, through an April 27, 1988, order of the Court which amended Paragraph 21 of the partial stipulation of facts and provides for a specific order should we determine BIOSIS is not entitled to a tax exemption as a purely public charity.

section 2(a)(v) which permits the General Assembly to exempt from taxation institutions in the nature of purely public charities.

We note that BIOSIS carries the burden in this matter of proving that it is entitled to the tax exemption. *Anastasi Brothers Corp. v. Commonwealth,* 455 Pa. 127, 315 A.2d 267 (1974). Thus, because BIOSIS seeks a tax exempt status as a purely public charity, it must establish that it meets the criteria of a purely public charity.

The Pennsylvania Supreme Court has set forth five criteria which an organization must fulfill in order to qualify for the foregoing tax exemption in *Hospital Utilization Project v. Commonwealth,* 507 Pa. 1, 487 A.2d 1306 (1985) *(HUP).* According to *HUP,* an entity qualifies as a purely public charity if it possesses the following characteristics: (1) Advances a charitable purpose; (2) Donates or renders gratuitously a substantial portion of its services; (3) Benefits a substantial and indefinite class of persons who are legitimate subjects of charity; (4) Relieves the government of some of its burden; and (5) Operates entirely free from private profit motive. *Id.* at 22, 487 A.2d at 1317.

BIOSIS first argues that it does, in fact, advance a charitable purpose by collecting, preserving, and making available its library to the public. Without its library, BIOSIS argues, the public would be unable to access the accumulated literature in the biological sciences field.

The definition of "charitable purpose" was set forth in *Hill School Tax Exemption Case,* 370 Pa. 21, 87 A.2d 259 (1952), where the Pennsylvania Supreme Court stated:

> "The word 'charitable', in a legal sense, includes every gift for a general public use, to be applied, consistent with existing laws, for the benefit of an indefinite number of persons, and designed

to benefit them from an educational, religious, moral, physical or social standpoint. In its broadest meaning it is understood 'to refer to something done or given for the benefit of our fellows or the public.' "

*Id.* at 25, 87 A.2d at 262 (quoting *Taylor v. Hoag,* 273 Pa. 194, 196, 116 A. 826 (1922)).

In the instant matter, the service which BIOSIS provides does not benefit the public at large but, rather, benefits scientists, universities, hospitals, and government agencies, all of which pay for BIOSIS' services. Although the public may benefit secondarily from BIOSIS' services, we conclude that BIOSIS' purpose is not charitable in nature.

BIOSIS next argues that it donates a substantial portion of its services. Its primary donation, BIOSIS contends, is making the information that it abstracts available at a price substantially less that its value. Thus, although BIOSIS charges a fee for its services, BIOSIS maintains that the fees charged are not an economic *quid pro quo.*

BIOSIS relies on *Hill School* and *West Allegheny Hospital v. Board of Property Assessment, Appeals and Review of Allegheny County,* 500 Pa. 236, 455 A.2d 1170 (1982) in support of its position that BIOSIS should not lose its tax exempt status as a purely public charity simply because it receives a fee for its services. We do not agree.

In both *Hill School* and *West Allegheny,* the entities were found to be purely public charities and, thus, entitled to a tax exempt status even though both charged fees for their services. However, what distinguishes BIOSIS from *Hill School* and *West Allegheny* is that the Hill School regularly operated at a loss and the West Allegheny Hospital maintained an open admission policy without regard to a patient's ability to pay. BIOSIS, on the other hand, neither regularly operates at a

loss, nor provides services regardless of a client's ability to pay. The record is devoid of any evidence which would indicate that BIOSIS provides services to those unable to afford its fees. All of the publications made available by BIOSIS are donated by the scientific community, yet BIOSIS charges for its publications and computer searches. Thus, we conclude that BIOSIS does not donate a substantial portion of its services. BIOSIS merely discounts its prices as a result of the articles donated to BIOSIS.

As already noted, BIOSIS' beneficiaries include government agencies, hospitals, scientists, and universities, all of which pay a fee for BIOSIS' services. These beneficiaries are definite in number and "when viewed as administrative entities, are not legitimate objects of charity." *HUP*, 507 Pa. at 22, 487 A.2d at 1317.

Furthermore, after examining the record once again, we are not persuaded that BIOSIS relieves the government of a burden. BIOSIS argues that in the biological sciences field, it is the only entity which performs the role of maintaining complete comprehensive indexes of literature. In support of this position, BIOSIS argues that the testimony of its expert witness established that if BIOSIS did not carry on its business of abstracting and indexing work, the United States Government would have to create and fund a comparable service. This argument is not persuasive, however, since testimony was also produced which indicated that other services make available the same information as that provided by BIOSIS. The only difference that we find between BIOSIS and the other services is that other services are not as complete, nor as comprehensive. Accordingly, while BIOSIS' services may be unique and may provide the most convenient method of obtaining biological sciences information, the same information is available elsewhere from other sources.

Finally, BIOSIS attempts to persuade this Court that it operates without private profit motive by arguing, *inter alia*, that BIOSIS is exempt from the payment of Federal income taxes, BIOSIS' corporate officers serve without compensation, and that BIOSIS is only able to "make ends meet" because its clients have advanced BIOSIS money and allow BIOSIS to earn interest on the money before incurring costs. None of these arguments are persuasive, however, nor do they explain the profit generated by BIOSIS in three of the four years in which BIOSIS was audited (1974, 1976, and 1977).

BIOSIS compares itself to the society in *American Society for Testing and Materials v. Board of Revision of Taxes,* 423 Pa. 530, 225 A.2d 557 (1967) (*ASTM*) and asserts that like the society, BIOSIS' primary mission is to educate and assist the public. We find that the major difference, however, between this case and *ASTM* is that all lectures, paper discussions, seminars, and symposia of the society in *ASTM* were open to the public *without charge.* Moreover, *ASTM's* operations resulted in net losses to the society. BIOSIS' comparison with *ASTM* is, therefore, misplaced.

Based upon the foregoing discussion, we conclude that BIOSIS fails to fulfill the requisite criteria of a purely public charity. Accordingly, our previous determination that BIOSIS is not entitled to a tax exempt status pursuant to Section 204(10) of the Code is affirmed.

### ORDER

AND NOW, this 22nd day of December, 1988, the exceptions of Biosciences Information Service are overruled and the prior order of this Court in the above-captioned matter is affirmed.

Judge MACPHAIL did not participate in the decision in this case.