560 A.2d 932

**CONCERN–PROFESSIONAL SERVICES FOR CHILDREN AND YOUTH, a Pennsylvania non-profit corporation, Appellant,**

v.

**BOARD OF ASSESSMENT APPEALS OF BERKS COUNTY, Pennsylvania and Reading School District, Appellees.**

**CONCERN–PROFESSIONAL SERVICES FOR CHILDREN AND YOUTH, a Pennsylvania non-profit corporation, Appellant,**

v.

**BOARD OF ASSESSMENT APPEALS OF BERKS COUNTY, Pennsylvania, Appellee.**

Commonwealth Court of Pennsylvania.

Argued April 4, 1989.

Decided June 23, 1989.

Petition for Allowance of Appeal Denied Nov. 27, 1989.

Alan S. Readinger, Reading, for appellant.

James M. Lillis, Reading, for intervenor Reading School Dist.

Louis R. Rizzuto, Berks County Sol., for appellee.

Before BARRY and COLINS, (P.), JJ., and KALISH, Senior Judge.

COLINS, Judge.

Concern–Professional Services for Children and Youth (Concern) appeals from two orders of the Court of Common Pleas of Berks County dated June 30, 1988, which dismissed Concern's appeal from the Berks County Board for the Assessment and Revision of Taxes' (Board) denial of Concern's applications for exemption from the payment of real property taxes.

.

Concern is a Pennsylvania non-profit corporation which engages in foster care programs, child placement programs, counselling and other child welfare activities. Concern owns two parcels of property, situate at 231 West Windsor Street, Reading, Berks County, Pennsylvania (Reading facility) [1] and R.D.1, Lenhartsville, Greenwich Township, Berks County, Pennsylvania (Lenhartsville facility).

The Reading facility is being utilized as part of the community life skills program at Concern, which is a program designed to provide services to sixteen and seventeen year old children who are without family resources and who require assistance in community life skills in order to prepare those children to move out into society as self-supporting adults. The Lenhartsville facility offers short-term foster care for girls until more permanent placement can be located elsewhere. These properties are the subject of the instant appeals, which have been consolidated for disposition by this Court.

On September 14, 1987, Concern filed applications with the Board for the exemption of said properties from the payment of real property taxes. The Board denied the applications for exemption. Concern appealed to the Court of Common Pleas of Berks County, and the court, by two orders dated June 30, 1988, dismissed the appeals. Concern now appeals to this Court.

The sole issue presented is whether or not Concern is a purely public charity and, therefore, entitled to an exemption from the payment of real property taxes. As provided in Section 201 of The General County Assessment Law (Law), Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. § 5020–201, all real estate situate within the Commonwealth is subject to taxation. In order to be exempt from taxation, the owner of real property must prove that the property meets the stringent standards necessary to fit within one of the narrow exceptions outlined in Section

1. Reading School District's (intervenor at the trial court level) brief addresses the issue of exemption solely with respect to the Reading facility.

204(a)(3) of the Law, 72 P.S. § 5020–204(a)(3).[2] That section provides in pertinent part:

> (a) [t]he following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit:
>
> . . . .
>
> (3) All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence, or charity, ... with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed, and maintained by public or private charity: Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose....

■ In order to qualify as a purely public charity, an entity must possess the following characteristics as established by our Supreme Court in *Hospital Utilization Project v. Commonwealth*, 507 Pa. 1, 487 A.2d 1306 (1985). It must (a) advance a charitable purpose; (b) donate or render gratuitously a substantial portion of its services; (c) benefit a substantial and indefinite class of persons who are legitimate subjects of charity; (d) relieve the government of some of its burden; and (e) operate entirely free from private profit motive. *Id.*, 507 Pa. at 22, 487 A.2d at 1317.

■ Whether an institution is one of purely public charity is a mixed question of fact and law and we are bound by the trial court's decision if there was no abuse of discretion nor lack of supporting evidence. *Lutheran Social Services Appeal*, 114 Pa.Commonwealth Ct. 628, 539 A.2d 895 (1988). Concern bears the burden of proving its entitlement to the

---

**2.** This section was enacted pursuant to, and is limited by, the Pennsylvania Constitution which authorizes the legislature to exempt by law from taxation *"[i]nstitutions of purely public charity,* but in the case of any real property tax exemptions only that portion of real property of such institution which is actually and regularly used for the purposes of the institution." Pa. CONST. art. VIII, § 2(a)(v) (emphasis added).

tax exemption. It must establish that it meets the criteria of a purely public charity. *Biosciences Information Service v. Commonwealth,* 122 Pa.Commonwealth Ct. 294, 551 A.2d 672 (1988), *aff'g Biosciences Information Service v. Commonwealth,* 101 Pa.Commonwealth Ct. 384, 516 A.2d 434 (1986).

 The trial court held that Concern was unable to demonstrate that it donates or renders gratuitously a substantial portion of its services. Specifically, the court found that Concern produced no evidence that it rendered any services other than those for which it received payment according to its standard fee schedule.[3] While Concern asserted that the resident children at the Reading facility *themselves* are required to pay nothing in return for their residential and other care, Hillegas testified that Concern charges the referring agencies $64.00 per day per child. (N.T. at 37; Exhibit No. 3.)[4]

Hillegas testified that Concern, in establishing its per diem rate for a particular facility, takes into account all of its anticipated operating expenses for the facility, its staff costs, costs for psychologists, and other costs to come up with the rate charged to the referring agency. (N.T. at 38.) He testified that Concern also looks at what the market will bear in setting its per diem rate. (N.T. at 99.) In addition to a per diem rate charged, if therapeutic services are needed, they are provided at an additional cost of $25 to $30 per hour. (N.T. at 227; Exhibit No. 3.) Hillegas testified further that when Concern implements a rate increase, if the county referring agencies do not agree to pay the rate increase, Concern will not accept *future* referrals from that county, but will continue to service the children already in its care at the rate they were paying. (N.T. at 98.)

3. Glenn J. Hillegas, an officer and director of Concern, testified that none of the services provided at the Reading facility are provided free of charge or gratuitously. (Notes of Testimony (N.T.) at 111.)

4. Concern's Board of Directors passed a resolution to increase this per diem rate to $69.00 per day effective July 1, 1988.

The per diem rate charged by Concern at the Lenhartsville facility is $66 per day. (Exhibit No. 3.) Concern asserts that the short-term foster care program at this facility is very expensive due to the heavy staffing and supervision required, and that if it would charge based on the true market value for the cost of operating this facility, it would be more than the market could bear. Therefore, it maintains that it is operating this facility at a loss.[5] When asked why Concern continues to operate the Lenhartsville facility when it is allegedly not profitable, Hillegas responded that the program being offered at that facility strengthens the agency as a whole. (N.T. at 127.)

Concern argues that it should not be refused a tax exemption for these properties solely because it receives "some payment for its services." Concern maintains that the fees it charges are substantially less than the value of the services it provides. An identical argument was rejected by this Court in *Biosciences* on the bases that Biosciences neither regularly operated at a loss, nor provided services regardless of a client's ability to pay. *See also West Allegheny Hospital v. Board of Property Assessment, Appeals and Review of Allegheny County,* 500 Pa. 236, 455 A.2d 1170 (1982) and *Hill School Tax Exemption Case,* 370 Pa. 21, 87 A.2d 259 (1952).

A financial statement for the years 1986 and 1987 shows that Concern's operating revenues exceeded its expenses by $585,788 in 1986 and $334,915 in 1987. These income figures were calculated without taking into consideration additional nonoperating revenues of $60,991 for 1986 and $99,083 for 1987, comprised of grants, contributions, income from investments and other sources. (Exhibit No. 4.)

Thus, we are in agreement with the trial court that Concern has failed to meet its burden of proving that it donates or renders gratuitously a substantial portion of its

---

5. When asked specifically what the dollar figure loss was for the Lenhartsville facility, Hillegas was unable to provide that figure since the record does not break out the losses for this facility separately from those for another short-term foster care facility operated by Concern, which is not presently before this court. (N.T. at 125.)

services, and therefore, does not meet the criteria to qualify it as a purely public charity. We echo the words of Senior Judge Edenharter in his opinion that the work and accomplishments of Concern are commendable and it is undoubtedly a fine organization serving a community need. However, under the law, it is not entitled to a tax exempt status. Accordingly, we must affirm the June 30, 1988 orders of the trial court.

## ORDER

AND NOW, this 23rd day of June, 1989, the orders of the Court of Common Pleas of Berks County in the above-captioned matters dated June 30, 1988, are affirmed.